## SKILLEN v. JONES, ADM'R.

SURVIVING PARTNER.—*Suit Against by Administrator of Deceased Partner.—Demand.*—In a complaint by an administrator *de bonis non* against a surviving partner, to recover the share of the decedent in the partnership assets, it is necessary to aver a demand for a settlement and accounting before suit. The facts that the surviving partner was the original administrator, that he never made any settlement, as such administrator, with the proper court, and that he has been removed and the plaintiff appointed in his place, does not obviate the necessity of such demand, unless it is shown that, as surviving partner, he has violated his trust by failing to discharge his duties.

SAME.—*Set-Off.*—In such suit the surviving partner may set off an indebtedness of the decedent to him; and he may also set off the amount he may have paid to discharge the debts of the decedent, in excess of assets received by him as administrator.

PRACTICE.—*Interrogatories to Jury.*—The court was requested to submit certain interrogatories to the jury, which did not require the finding of any fact involved in the issues between the parties, but only what matters they considered in determining the amount of damages.

*Held*, that the request was properly refused.

SAME.—*Witness.*—The defendant in such a case was not entitled, as a matter of right, to testify in his own behalf.

SAME.—A daughter of the decedent was a competent witness in behalf of the administrator.

§AME.—*Verdict.*—*Special Findings in Answer to Interrogatories.*—When there is a general verdict and also a special finding in answer to interrogatories, and the special finding shows that the general verdict is for too much, the former will control the latter, and judgment should be rendered for the amount shown to be due by the special finding.

From the Marion Common Pleas.

*N. B. Taylor* and *E. Taylor,* for appellant.

*F. M. Finch* and *J. A. Finch,* for appellee.

OSBORN, J.—On the 22d day of March, 1871, James Skil-. len, Jr., and William M. Skillen instituted an action against the appellant. What it was for does not appear, as the complaint is not in the record. From the record, we learn that demurrers were filed and overruled, and an answer was also filed to the complaint, and a reply to the answer. Other action was taken in the cause, but neither the answer, demurrer, nor motions appear in the record.

In April of the same year, the appellee was substituted as plaintiff without objection or exception, and filed an amended complaint, in which he states that he is the administrator *de bonis non* of the estate of Robert G. Skillen deceased; that Robert was, in his lifetime, in full and equal partnership with the appellant in the business of milling, etc.; that at his death there were assets on hand belonging to the firm, amounting to thirty-nine thousand three hundred and forty-four dollars and ninety cents; all of which went into the hands of the appellant as surviving partner; that the debts of the firm amounted to twelve thousand four hundred and ninety-five dollars and twenty-four cents; that the appellant filed in the office of the clerk of the common pleas court a schedule of the assets and liabilities of the firm, showing the sums stated, which remains on file; that by the last will of Robert G. Skillen, he appointed the appellant executor thereof; that "having failed to make settlement thereof or of the affairs of the partnership, he was removed, and the appellee was appointed to administer the unadministered portion of said estate;" that the appellant never made any settlement of the estate in the partnership or of any of the

interest thereof in the same, but has taken and appropriated the same to his own use. It then avers that fifteen thousand dollars mentioned in the schedule was real estate held by the appellant and Robert G. as tenants in common, which has been sold by proceedings for partition, and that it should be deducted, and that the remainder of the assets, amounting to twelve thousand dollars and more above all the indebtedness of the firm, went into the hands of the appellant and were appropriated by him to his own use. It also alleges that James, Jr., and William M., the original plaintiffs, as heirs at law of Robert G., demanded a settlement and account for the assets of the appellant, which he refused and neglected to make and give them. The prayer is, that he be substituted as plaintiff in the action; and, as administrator *de bonis non*, he asks judgment for the amount so appropriated in the sum of nine thousand dollars and other proper relief.

A demurrer was filed to the complaint, because the plaintiff had no legal capacity to sue, and, second, because the complaint did not state facts sufficient to constitute a cause of action, which was overruled, and an exception taken.

Afterward, a motion was made to strike out the allegation of demand by James Skillen, Jr., and William M. Skillen and also the prayer that the appellee might be substituted as plaintiff. The motion was overruled, and the appellant again excepted.

An answer was then filed of four paragraphs. 1st. The general denial. 2d. That Robert G. Skillen at his death was indebted to the appellant in the sum of thirteen thousand dollars, as follows: five thousand dollars for the price and consideration of certain real estate mentioned, sold and conveyed by appellant to Robert G., two thousand two hundred dollars. for one-half of the rental value of the premises and mill used and occupied by the firm in their business for two years and a half, six thousand five hundred paid for Robert G. Skillen and for the benefit of his heirs, for a house and lot mentioned bought by Robert G. Skillen in his lifetime; that

after deducting fifteen thousand dollars, the estimated value of the real estate in the inventory, there remained of the partnership assets eleven thousand eight hundred and forty-nine dollars and sixty-six cents; that the defendant, long before the commencement of the action, retained the portion and share of the assets, five thousand nine hundred and twenty-four dollars and eighty-five cents, and applied the same to the payment and satisfaction of so much of the amount due him, and so fully settled and closed up the partnership affairs.

The third paragraph states that the appellant and Robert G. Skillen entered into partnership in April, 1861, in the business mentioned in the complaint; that, at that time, Robert had no money or property, and the defendant furnished all the means, owned the mill and the lot in which it was situate (describing it); that Robert G. Skillen agreed to pay one-half of the yearly rental value of the mill; that under that agreement the mill was occupied and used by the firm for two years; that the amount of rent due from Robert G. Skillen was two thousand two hundred and eight dollars, being one-half of the rental value of the mill; that the rent was not paid, nor was it charged in the partnership accounts; that the defendant sold and conveyed to Robert G. Skillen the undivided half of the mill property for five thousand dollars, which was not paid for, nor was the amount charged on the books of the partners, and that it remains due and unpaid; that during the partnership Robert G. Skillen purchased a house and lot in Indianapolis for six thousand five hundred dollars, which was paid for by the appellant, and that it remains due and unpaid; that Robert G. Skillen, at his death, was indebted to the appellant in the sum of fifteen thousand dollars, exclusive of interest, on account of those items; that Robert's share in the assets, as shown by the inventory, was only six thousand dollars, which was more than the real amount; that he settled the partnership affairs and business while executor, etc., by retaining his part after paying all debts of the firm, and by applying the portion of the

deceased remaining in payment of so much of the indebtedness of Robert to him.

The fourth paragraph is a set-off and sets up the partnership and the same items that are alleged in the third, and in addition claims interest on them in the sum of three thousand dollars, and ten thousand dollars due to him on partnership accounts.

After unsuccessfully moving that the defendant be compelled to separate and number his paragraphs of answer, the plaintiff filed separate demurrers to the second, third, and fourth paragraphs, because they did not state facts sufficient to constitute a defence. The court sustained the demurrer to the second and third, and overruled that to the fourth. Both parties excepted, and the defendant had leave to amend.

Instead of amending either of the paragraphs to which demurrers had been sustained, the defendant filed an additional and fifth paragraph, in which it was alleged, by way of set-off, that he was appointed and acted as executor, under the appointment, of the estate of Robert G. Skillen until his removal and the appointment of the plaintiff; that while acting as such executor, he paid out in the settlement of the debts of the deceased, and for his funeral expenses, four thousand dollars in excess of what came to his hands as such executor; that he did not render an account or have any allowance thereof prior to his removal; and that the estate is justly indebted to him in the sum of five hundred dollars for his services as executor.

To this last paragraph the plaintiff filed a demurrer, for the reason that it did not state facts sufficient to constitute a defence. The demurrer was overruled, and the plaintiff excepted. That left the first, fourth, and fifth paragraphs of the answer.

The plaintiff replied, first, by a general denial; the second, third, and fourth paragraphs were to the fourth paragraph of the answer—the second denied that Robert G. Skillen in his lifetime undertook to pay any of the sums therein mentioned, and alleged that he was not indebted for any of

those sums within six years next before the commencement of the action. The third alleges an accounting and settlement between Robert G. Skillen, in his lifetime, and the defendant, whereby Robert G., was found to be indebted to the defendant in the sum of four hundred and eighty-five dollars, which was then paid. The fourth alleges that after the death of Robert G. Skillen, an account was taken by the defendant, as surviving partner, of the matters of the private indebtedness and account between them, when it was found that the defendant was indebted to the deceased in the matters of their private account, including all matters by either drawn out of the partnership for private use, in the sum of ten dollars and fifty cents, which he then charged himself with and admitted that he owed it to the estate. The fifth is a reply to the fifth paragraph of the answer. It alleges that there came to the hands of the defendant, as executor, property amounting to seven hundred and fifty dollars and no more, and if he paid out other or greater sums for the payment of the debts of the deceased, he did so of his own money and cannot charge the estate.

The cause was tried by a jury, who rendered a general verdict for the plaintiff for the sum of four thousand four hundred and thirteen dollars and ninety-three cents.

The appellant submitted thirty-five interrogatories for the jury to answer. The court struck out four of them and refused to submit them to the jury, but required them to answer thirty-one. The defendant excepted to the action of the court in striking out the interrogatories.

It will not be necessary to set out in full many of the interrogatories and answers. By them it is shown that the parties went into partnership in the spring of 1862; at that time the deceased had no other property or money than two thousand dollars; that the personal property of the appellant in and pertaining to the mill was worth from two thousand to three thousand dollars; that he was in good circumstances; that he owned the mill and the lot on which it stood, and that it was worth from eight thousand to ten thousand dol-

lars; that the deceased became the owner of the undivided half of the mill and lot on the 23d of April, 1863, by purchase of the appellant; that the firm occupied it about a year before he became such half owner, and the rental value thereof was one thousand one hundred dollars per annum; that there was no charge on the books against the deceased for any portion of the mill during that time; that he had charge of the books and accounts, and they had no clerk; that when the partnership was formed, Robert G. Skillen had no money or means to put into it against the personal property pertaining to the mill, and belonging to the appellant, except one thousand dollars in money and other property, not exceeding in value another thousand dollars; that the amount that Robert G. Skillen was to pay the appellant for the undivided half of the mill lot was five thousand dollars, and that he had no means to pay the purchase-money except money derived from the partnership; that there was no charge in the partnership books and accounts against him for the five thousand dollars, and that there was no proof of its payment but the deed of conveyance.

Interrogatory 16 and the answer are:

"Did said Robert G. Skillen pay to James Skillen the half, or any portion, of the rent of said mill and premises for the time they were in partnership before purchase of the said half of the mill by said Robert G. Skillen? If he did, how did he pay it, and when did he pay the same? Answer. The settlement at about the time of the purchase of the mill shows the settlement of all accounts to that date."

The answers further show that in the summer of 1864, Robert G. Skillen paid for work in his house two thousand two hundred dollars out of the money of the mill business and partnership, but not out of the company fund; that no part of the money taken from the mill business and paid for work on his house was ever charged on the partnership books; that the appellant knew about the money being drawn from the mill and partnership business, to pay for the work on the house, "but as to what funds it was paid out

Skillen *v.* Jones, Adm'r.

of, we cannot answer; that Robert purchased a lot of McCutchin for four thousand dollars, but had no money to pay for it except from the partnership business; that there was no charge against him for cash received or taken for the payment of that lot, except two thousand and eighty dollars and nine cents; that Robert was sick and unable to attend to business for the last six months, and that he died March 16th, 1866; that the appellant became the executor of the estate of Robert G. Skillen on the 6th of April, 1866, and continued to act as such until removed by the court on the 11th of May, 1871; and that there came to his hands, as such, effects amounting to seven hundred and forty-nine dollars and twenty-five cents, leaving out whatever interest he had in the partnership; that whilst acting as such executor, he paid debts against the estate to the amount of three thousand three hundred and seventy-five dollars and fifty-four cents; that two thousand six hundred and twenty-six dollars and twenty-nine cents of such debts was in excess of the amount of the personal property which so came to his hands; and that no part of it has been allowed to him by the court; that no demand for a settlement and accounting was made by the plaintiff before the action was commenced; that the jury have no means of knowing, whether any of the accounts and claims due the partnership and set out in the schedule and appraisement of the partnership property, filed by the appellant, have been collected, and the proceeds received by him; that Robert G. Skillen had charge of all the business in the mill, including keeping the books, until he went to Europe about May, 1865, and the appellant had charge of and attended to matters inside of the mill, and that the entry of November 23d, 1864, did not embrace any other matters of settlement than the account charged in the partnership books against Robert G. Skillen.

The appellant moved the court for judgment upon the answers to the interrogatories, which was overruled. He then moved the court for a new trial and filed a written motion, assigning twenty-three reasons therefor, which was over-

ruled. He then filed a written motion in arrest of judgment, and that was overruled. Proper exceptions were taken. Final judgment was rendered on the general verdict of the jury.

A bill of exceptions is properly in the record, setting out the evidence in the cause and several alleged erroneous rulings of the court during the trial, to which exceptions were duly taken.

The errors assigned are, 1st. In overruling the demurrer to the complaint. 2d. In overruling the motion to strike out a part of the complaint. 3d. In sustaining the demurrer to the second and third paragraphs of the answer. 4th. In overruling the motion of the appellant for judgment upon the answers of the jury to the interrogatories. 5th. In overruling the motion for a new trial. 6th. In overruling the motion in arrest of judgment. 7th. In rendering judgment on the general verdict. We do not see that the appellant was injured by overruling his motion to strike out a part of the complaint, and the court committed no error by overruling the motion.

The objection to the complaint is, that there is no copy of the inventory of the partnership property filed with the complaint and made a part of it. That was not necessary. The inventory was not the foundation of the action. The action was for appropriating the effects of the partnership to his own use. It is also insisted that the complaint should have averred a demand by the plaintiff before suit was brought. The other ground of demurrer, that the appellee had not legal capacity to sue, is abandoned, and we do not consider or pass upon it.

The death of Robert G. Skillen dissolved the partnership and invested the appellant, as sole surviving partner, with the exclusive right of possession and management of the whole partnership property, for the purpose of settling and closing the business of the firm. Lindley Part. 1033; Parsons Part. 440; Story Part., sec. 346. The right of the administrator of the deceased is simply to have the ultimate share of the deceased ascertained and paid. That, of course,

includes the right to have the estate of the partnership closed up honestly, efficiently, and as speedily as the substantial interests of its affairs demand.   If the surviving partner fails unreasonably to close up and settle the partnership business, or if it shall be shown that he is unfaithful to his trust, a court will entertain an action against him for an account and final adjustment of the partnership business, and in a proper case appoint a receiver.   Story Part., sec. 347.

The complaint charges that the appellant had been executor of the last will of the deceased partner, and that he had been removed by the court; that he never made any settlement of the estate in the partnership, or of any interest thereof in the same, but had taken and appropriated the same to his own use.   There is no allegation that on a final settlement and adjustment of the accounts of the partners, as between themselves, there would be anything due to the estate; no averment of an effort to settle, or any request even for that purpose; no allegation of negligence, fraud, or violation of his trust, otherwise than that he had never made any settlement, and that he had appropriated the property and estate of the partnership, after paying its debts, to his own use.   There is nothing in the complaint to show that in a settlement of the accounts of the partners, as between themselves, the appropriation charged was wrongful—that the appellant might not justly retain the whole of the partnership assets.   Undoubtedly the appellee, as administrator, was entitled to a settlement and adjustment of the accounts of the firm, and to receive whatever should be found due the estate from the appellant as survivor.   But until a refusal to make such settlement, or, at least, until it appears that there has been a violation of his trust, or a failure to discharge his duty as such, he is not liable to an action for an alleged balance, as in this case.   Until the partnership has been adjusted, one partner cannot sue his co-partner for his share of the partnership property or assets.

An action lies for such adjustment in a proper case made by the complaint, but not unless by the pleadings and proof it is such as would formerly have called for the interposition of a court of equity. *Page* v. *Thompson*, 33 Ind. 137; *Hendry* v. *Hendry*, 32 Ind. 349.

It is insisted by the appellee that, because the appellant was both surviving partner and executor, no demand was necessary. The fact that he occupied that double relation could not affect his liability for acts done in either capacity. It makes his position more difficult, and his acts will be more liable to question and misconstruction, and he will be watched more carefully, to guard against his using his executorship as a means of securing undue advantage to himself as a partner. Parsons Part. 450; Lindley Part. 1037. In this case, the complaint alleges no act done by the appellant in his capacity as executor, securing or attempting to secure to himself any undue advantage as surviving partner. The demurrer to the complaint should have been sustained.

This would reverse the judgment, and ordinarily it would be unnecessary to consider any other question. But in this case there are other questions which ought to be decided.

The second and third paragraphs of the answer differ in some particulars, but in their main features they are alike, and each shows that the estate of the deceased was largely indebted to the appellant. Two items alleged in each of those paragraphs more than equal the half of the alleged surplus of the assets of the partnership after the payments of its debts, five thousand dollars for the purchase-money of the real estate, and two thousand two hundred dollars for rent of the mill. Those paragraphs were good, and the general denial did not cover them. There was no averment in the complaint of a misappropriation of the assets. The paragraphs admitted the appropriation and avoided liability by showing that he had a right to make it.

But as the record shows that all the evidence was admitted that could have been, under these paragraphs, and the rights of the parties adjudicated, as if the general denial or

some other pleading put in issue the same facts, the error was a harmless one.   2 G. & H. 221, sec. 382, p. 278, sec. 580; *Lyon* v. *Perry*, 14 Ind. 515.

The next question is, was the appellant entitled to have judgment entered upon the answers of the jury to the interrogatories?

The allegations of the complaint show that the total assets of the partnership, after the payment of its debts, were eleven thousand eight hundred and forty-nine dollars and sixty-six cents.   Half of that sum would be five thousand nine hundred and seventy-four dollars and eighty-three cents. It is not claimed that any profits were made by the appellant with which he ought to be charged.   All that is claimed is the last mentioned sum.   The complaint then charges that the appellant appropriated to his own use eleven thousand eight hundred and forty-nine dollars and sixty-six cents of the effects of the partnership, which ought to have been divided equally with his deceased partner's estate.   There is no allegation as to the time when the settlement and division should have been made, or when he made the appropriation.

The answers of the jury show that the appellant was the owner of the mill used and occupied by the firm during the first year of their partnership, and that one-half of its rental value was one thousand one hundred dollars during that time; that the appellant sold and conveyed to the deceased the undivided half of the mill, on the 23d day of April, 1863, one year after the partnership commenced, for five thousand dollars; that he had no means with which to pay either of those claims except money derived from the partnership; that during all that time he was the book-keeper; that there were no charges upon the books against him for either of those sums.

The general verdict finds that the deceased paid the appellant the rent and the purchase-money for the undivided half of the mill property.   The special findings are not inconsistent with that.   The result of the special findings is, as we think,

that the deceased took those sums from the partnership business, and that no charge was made against him on the firm books, and that he never accounted for them. The legal conclusion from which is, that his estate should be charged with those accounts on settlement, one-half of which is three thousand and fifty dollars.

The jury also found that the appellant was appointed executor on the 6th day of April, 1866, and continued to act until the 11th day of May, 1871; that, during that time, he paid debts against the estate to the amount of two thousand six hundred and twenty-six dollars and twenty-nine cents exceeding the amount of personal estate which came to his hands, leaving out whatever interest he had in the partnership business; and that no part of it had been allowed to him as such executor. That would be a proper item to be deducted from any amount for which he would be liable, on account of appropriating to himself the partnership effects. If he had paid debts against the estate out of his own means, he would have the right to reimburse himself out of funds which might thereafter come to his hands. Or he might take of the funds in his hands, as surviving partner, which on a final settlement and adjustment would belong to the estate of the deceased, and in his capacity of executor use it in payment of the debts against the estate, and having done so would be entitled to a credit for it.

It is true that the answer to the sixteenth interrogatory, requiring the jury to answer whether the half or any portion of the rent of the mill had been paid, states that the settlement at about the time of the purchase of the mill shows the settlement of all accounts to that date. But a subsequent answer of the jury states that the settlement embraced no other than the accounts charged in the partnership books, and the answers also show that there was no charge on the books for that, so that the settlement could not have included the rent.

The special findings do not show that the McCutchin property was paid for by the deceased. It simply shows

that it was purchased, and that he had no means with which to pay for it except from the partnership business; and they show that the two thousand two hundred dollars for work done on the house was not derived from the firm.

The case by the record stands thus: Under the complaint, the appellee might recover five thousand nine hundred and twenty-four dollars and eighty-five cents. - The general verdict is for four thousand four hundred and thirteen dollars and ninety-three cents.

The special findings show that the appellant should have been credited with the half of the purchase-money for the mill property, and the rent amounting to the sum of three thousand and fifty dollars; also, the two thousand six hundred and twenty-six dollars and twenty-nine cents for debts against the estate of the deceased paid whilst he was executor; making in all five thousand six hundred and seventy-six dollars and twenty-nine cents, which being deducted from five thousand nine hundred and twenty-four dollars and eighty-three cents, leaves two hundred and forty-eight dollars and fifty-six cents.

The special finding shows that the general verdict was for too much, but it does not show that it ought to have been for the defendant. It is not inconsistent with a general verdict for the plaintiff, but it is inconsistent with the one rendered.

The motion was for judgment on the special finding of facts. -

The sections of the statute, under which the motion is predicated (2 G. &. H. 205–6, secs. 336–7), provide that in all cases, when requested by either party, the court shall instruct the jury, if they render a general verdict, to find specially upon particular questions of fact to be stated in writing, which finding shall be recorded with the verdict. If the special finding of facts is inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly.

The special finding is inconsistent with the general verdict

and excludes its correctness. It shows that the verdict should have been for only two hundred and forty-eight dollars and fifty-six cents, and, under section 337, the judgment should have been rendered for that amount.

Among the causes for a new trial was the refusal of the court to submit certain interrogatories to the jury. They did not require the finding of any fact involved in the issues between the parties, but only what matters they considered in determining the amount of the damages. Such a finding is not within the statute. That contemplates that the jury shall find specially any fact in issue in the case. The jury ought not to be required to state upon what evidence their action is based. A general verdict is that by which they pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant. A special verdict is that by which they find the facts only, leaving judgment thereon to the court. 2 G. & H. 205, sec. 335. So the special finding upon particular questions must be upon questions of fact, leaving the court to pronounce judgment, whether it is inconsistent with the general finding. They need not state what they took into consideration in making up their verdict. The facts found by them must govern the action of the court.

Another cause was the refusal to permit the appellant to testify as a witness in his own behalf. There was no error in that. 3 Ind. Stat. 560, sec. 2. Another was, that the court permitted the daughter of the deceased to testify as a witness in behalf of the plaintiff. The section of the statute above referred to did not render her incompetent.

The instruction to the jury, that to entitle the defendant to credits claimed, he must not only prove them, but in addition that they remained unpaid, was calculated, we think, to mislead the jury. They might understand from it that, although the defendant had established his credits as claimed by him, still he was not entitled to the benefit of them, unless he also proved that they had not been paid. Of course, the learned judge, before whom the cause was tried, did not

intend to convey such a meaning, and if his attention had been called to the language, would undoubtedly have modified it.

The judgment of the said Marion Common Pleas is reversed, with costs. The cause is remanded, with instructions to the court below to grant a new trial and sustain the demurrer to the complaint, and for further proceedings in accordance with this opinion, unless the appellant shall waive said demurrer to the complaint and his motion for a new trial, and consent that judgment be rendered according to the special finding of fact by the jury. If he shall so waive and consent, then the said court is instructed to render judgment for the plaintiff for the sum of two hundred and forty-eight dollars and fifty-six cents, with interest from the rendition of the said verdict, and costs to and including the time of its rendition.