## KRUTZ *v.* CRAIG, ADMINISTRATRIX.

NEW TRIAL.—*Application for, When and How Made.*—An application for a new trial in a civil action cannot be made except by motion, upon written cause filed at the time of making the motion, and the application must be made at the term at which the verdict or decision is rendered, except it be for cause discovered afterwards; and the court cannot, without the agreement or waiver of the parties, grant time beyond the term to make the application, for a cause other than one discovered afterwards. But when a trial is pending at the close of the term, the court may proceed with it until it is concluded, and the additional time thus required will be held to be within the legal term.

PARTNERSHIP.—*Suit Against Surviving Partner by Personal Representative of Deceased Partner.*—A complaint by the administrator of the estate of a deceased partner, against the surviving partner, to recover the value of assets of the partnership, which the defendant has refused to account for, misapplied and converted to his own use, should contain proper traversable averments that the partnership debts have been paid, that the affairs of the partnership have been finally settled, and that the shares of the partners have been ascertained, and should show a demand made, or a proper excuse for not making a demand, before the bringing of the action.

FRAUD.—*Rescission of Contract.*—*Diligence.*—An unexplained delay of over four years in disaffirming an agreement was held fatal to an action to rescind the agreement on the ground of fraud.

EVIDENCE.—*Receipt.*—*Contract.*—A receipt is a written acknowledgment of having received money or a thing of value, without containing any affirmative obligation upon either party to it,—a mere admission of a fact in writing; when it contains stipulations which amount to a contract, it must be governed by the law of contracts, and can be avoided only as contracts are avoided.

From the Switzerland Circuit Court.

*S. Carter, W. R. Johnston, J. A. Works, J. D. Works* and *C. E. Walker,* for appellant.

*H. W. Harrington* and *J. B. McCrellis,* for appellee.

BIDDLE, J.—The complaint in this case alleges the following facts, to wit:

The plaintiff, as administratrix of Joel Craig, deceased, late of said county, complains of the defendant, and says that said defendant and said Joel Craig, in his lifetime, in Octo-

ber, 1840, entered into a copartnership, at said county, to carry on a general merchandising business for an indefinite period of time; that said Craig invested in said firm, as capital, at the time of its formation, the sum of two thousand one hundred and fifty-seven dollars, and the said Krutz the sum of six hundred and ninety-seven dollars and twenty-nine cents, as appears from a memorandum in writing, executed by them June 17th, 1846, a copy of which is filed as an exhibit; that by the terms of said partnership, Krutz was to do the active management of the business, and the principal buying and selling; that said partnership was carried on until it was dissolved by the death of Craig, in 1867; that said firm was prosperous, and made large profits, which came into the hands of Krutz, who, in the year 1846, invested thereof the sum of four hundred dollars in eight and sixty-four hundredths acres of land in the county of Shelby, and State of Tennessee, for which land he received a deed of conveyance in his own name from one Chauncey Ives and wife, on the 26th of January, 1846, a copy of which is made an exhibit, and that the land was so purchased with the partnership funds of said firm; that on the 2d day of June, 1859, said Krutz sold said land for six thousand and forty-eight dollars, and conveyed the same to one James C. Jones, and received the purchase-money therefor; that Krutz wholly failed to account to said firm for said six thousand and forty-eight dollars and said four hundred dollars, but kept the same concealed from said Joel Craig, his copartner; that said Krutz, on the 30th day of May, 1859, purchased with the funds of said partnership from Jacob Seasongood, B. Mayberge, Max Hellman, Philip Heidelbach, Marden Heidelbach and their wives, the undivided two-thirds of one thousand four hundred and forty acres of land situate in what was known as the Delaware tract in the State of Kansas, and described by section, township and range, as shown by an exhibit; and that he had purchased, previously, the undivided one-third from B. Mayberge and wife; that said Krutz has never accounted for said lands or the

proceeds thereof; that they were worth, at the time the partnership was dissolved, ten thousand dollars, and the defendant has converted the same to his own use ; that the defendant, during the existence of said partnership, at divers times, purchased a large quantity of real estate in the State of Kansas with the funds of said partnership, and took conveyances for the same in his own name, and never accounted for the same to said Joel Craig; and that the same was worth at the time of his death the sum of one hundred and fifty thousand dollars; said lands and deeds being described in a schedule made part of the complaint; that after the death of said Joel Craig, September 28th, 1868, the plaintiff and one S. H. Stewart, as administrators of said estate of Joel Craig, made a settlement of said decedent's business with said Krutz, which embraced all their business transactions except what is hereinbefore alleged; that at the time of said settlement, she and said Stewart did not know that said Krutz had not accounted for said real estate and the proceeds thereof, purchased by him with partnership funds, and the said Krutz concealed the fact from them; he had the possession of all the books and papers belonging to said firm, and the said administrators had no means of knowing of the existence of the facts hereinbefore alleged, which plaintiff discovered since the date of said settlement; that by the terms of said copartnership, the said Joel Craig was entitled to two-thirds of the profits of said business, and the said Krutz to one-third; that said Craig was entitled, at the time of his death, to two-thirds of the value of said lands then unsold and of the proceeds of the lands said Krutz had sold, his share of which amounted to one hundred and fifty thousand dollars, which the defendant unjustly withholds from the plaintiff, together with a large amount of interest thereon.

Prayer for an account, judgment for one hundred and fifty thousand dollars, and general relief.

At a subsequent term of the court, the appellee filed a second paragraph to her complaint, alleging the following facts :

That said decedent, Joel Craig, and the defendant, in the month of October, 1840, entered into a contract, whereby it was agreed that said Craig and Krutz would form a copartnership at said county, to carry on a general merchandising business, and for trading, shipping produce down the Ohio and Mississippi rivers, buying and selling land on speculation, milling and distilling, and for other general purposes, for an indefinite period of time, in the name of William G. Krutz, which they agreed to use as and for their firm name; that said Krutz and Craig should share the profits and bear the losses of said business equally; that each partner, at the dissolution of the partnership, should withdraw the amount of capital invested by him in said business and not withdrawn before the dissolution thereof; that said Krutz and Craig should each have his living out of said business as a part of the expenses of the same; that is, that each partner might withdraw from said business such necessaries of life as each might have need of for his family, and the same should not be charged against him on the books of the firm; that at the commencement of said partnership, the said Craig invested in said business the sum of two thousand one hundred and fifty-seven dollars, and the said Krutz the sum of six hundred and ninety-seven dollars and twenty-nine cents, as appears from a memorandum in writing, made a part of the complaint as an exhibit; that the parties carried on said business under said contract, until the said Joel Craig died, on the 7th day of February, 1867; that during the existence of said partnership, the said firm made large profits over and above all expenses, to wit, thirty thousand dollars, which came into the hands of the defendant, and of which the said Craig was entitled to one-half, and of which said Krutz yet retains the sum of ten thousand dollars, belonging to said Craig's estate; that said Krutz, at the time of the dissolution of said partnership, was indebted to the firm in a large amount, to wit, twenty-five thousand dollars, for money and property withdrawn by him, which he never accounted for and justly owes the firm, one-half

of which belongs to the plaintiff as the said Craig's administratrix; that the firm, at the time of the dissolution thereof, was indebted to Craig for money paid into it at its commencement, and during its continuance, at various times, in the sum of fifteen thousand dollars, all of which was in the defendant's hands at the time of the dissolution of said firm, and which he fails and refuses to pay over or account for in any manner.

That said firm, at divers times, purchased large and valuable tracts of real estate, in Switzerland county, Indiana, in Shelby county, Tennessee, and in various parts of the State of Kansas, which are described in a bill of particulars filed with the complaint, amounting in value to the sum of fifty thousand dollars; that said Krutz took the deeds of conveyance for said real estate (except three hundred and twenty acres in Kansas) in his own name, that being the name of the firm, for greater convenience in making sale of the same; that at the death of said Craig, the larger part of said real estate belonging to said firm, to wit, two thousand seven hundred acres of valuable lands in Kansas, town lots in the town of Paola, in Kansas, and the real and personal property, notes, cash and accounts of said firm, remained in the hands of said Krutz, and amounted in value to the sum of seventy-five thousand dollars; that at the time, the indebtedness of said firm was less than five thousand dollars, which has since been paid out of its assets.

That during the latter part of the life of Joel Craig, who was much older than the defendant, the defendant took charge of the more active part of the business, and had control of the assets and books and accounts of the firm, and so held the same until the death of said Craig, who reposed the most unbounded confidence in the integrity of said Krutz; that after the death of said Craig, she and one S. H. Stewart were appointed the administrators of said Craig, duly qualified and entered upon the duties of their trust; that she and said Stewart were ignorant of the true condition of said firm, and the amount of the assets thereof, and

had no means of knowing the same, and this plaintiff had the principal part of said administration to perform, and was unacquainted with her rights and the facts aforesaid, which the defendant well knew, and of which he took the advantage to induce her to make the agreement hereinafter named; that the defendant, in order to accomplish his end and produce a false impression, allowed the stock in the store of said firm to run down after the death of said Craig, and represented to this plaintiff that said firm had little or no assets, and that nothing was due said Craig from said firm at the time of his death, that he (defendant) was about bankrupt, and that if O. P. Cobb, Christy & Co., with whom he had a law suit, should succeed in their suit, he, the defendant, would be compelled to take the benefit of the bankrupt law, and the plaintiff would get nothing from said firm, and proposed to compromise the affairs of said partnership with the plaintiff and said Stewart, as the administrators of said Craig, and pay them something, in order to settle up said partnership; and the plaintiff and said Stewart, relying on the truth of said representations, and being ignorant of the fact that the assets of said firm, of which said Krutz had the possession, amounted to more than what said Krutz represented, and being ignorant of the true condition of the affairs of said firm, and believing said Krutz's representations to be true, assented to his proposition; and thereupon said Krutz, on the 28th day of September, 1868, in pursuance thereof, executed to said administrators his three promissory notes of one thousand dollars each, and in addition agreed to pay the taxes on the lands in Kansas until and including the year 1871, meaning the three hundred and twenty acres standing in the name of said Craig, and to build a board partition fence between the dwelling-house of Mrs. Craig and James Hester, and to pay an account due Charles Moore and Bledsoe & Beamer of one hundred and twenty-four dollars, and John Melcher, at Vevay, for tombstones, and release any demands he might have for debts theretofore paid by him for said Craig or goods furnished Craig's family, and gave

said administrators a memorandum in writing of said agreement, signed by him, a copy of which is filed and made a part of this complaint.

That the defendant, at and before the execution of said agreement, represented that he had paid debts for said Craig to a large amount, to wit, five thousand dollars, and that said Craig was largely indebted to said firm for goods for said Craig and assets withdrawn by him. And the plaintiff says that all of said representations so made by said Krutz were untrue, and were made by him to deceive the plaintiff and her co-administrator and throw them off their guard, and did deceive them and enable him to obtain said unfair and unjust settlement aforesaid.

That during the existence of said firm, at divers times, said Krutz took of the assets of said firm a large amount, to wit, ten thousand dollars, and purchased therewith large tracts of real estate in Indiana, Tennessee and Kansas, and took the deeds therefor in his own name, and sold part thereof and speculated in the same on his own account, and thereby realized large profits, to wit, twenty-five thousand dollars, which belong to said firm, and which he wholly failed in any manner to account for or pay over, one-half of which belongs to the plaintiff as administrator of said Craig's estate, and also one-half of the money so withdrawn, to wit, one-half of fifty thousand dollars; that she is unable to furnish a bill of particulars of the business of said firm, or of the demands aforesaid, further than those filed with the first paragraph of this complaint, for the reason that the books and accounts and papers of said firm are all in the hands of said defendant, and she is unable to furnish a bill of particulars thereof.

Prayer that said settlement be set aside, an account of the partnership be taken, and a judgment for fifty thousand dollars.

The agreement of settlement, made a part of the second paragraph of the complaint, is in the following words:

" An agreement entered into this day by William G.

Krutz, of Switzerland county, Indiana, with Cynthia A. Craig and S. H. Stewart, administrators of Joel Craig, deceased, witnesseth, that whereas a settlement has been made between said Krutz and said administrators, of the business of said Krutz and said Craig, deceased, Krutz having executed his three promissory notes of one thousand dollars each, and in addition to which he agrees to pay the tax on the land in Kansas, until and including the year 1871, and to build a board partition fence between the dwelling-house of Mrs. Craig and Jane Hester, he furnishing the lumber and nails, and to be [a] *tyght* board fence, and also to pay an account due Charles Moore and Bledsoe & Beamer, of one hundred and twenty-four dollars, and John Melcher, of Vevay, for tombstones, and release any demands he may have for debts heretofore paid by him for said deceased, or goods furnished Craig's family.

"Witness my hand and seal, this 28th day of September, 1868.      (Signed)      WILLIAM G. KRUTZ."

The appellant pleaded six paragraphs of answer. Demurrers, for want of sufficient facts, were overruled to paragraphs two, four, five and six, to which rulings the appellee excepted, and sustained, for the same cause, to paragraph three, to which ruling the appellant excepted. Various paragraphs of reply were filed to the several paragraphs of answer, and rulings in sustaining and overruling demurrers were had upon them, and exceptions taken, but as neither party discussed them in their briefs, and as we can perceive no turning point amongst the questions raised thereby, we do not more particularly state them. Issues joined, jury trial, verdict in favor of appellee for twenty-eight thousand dollars.

The verdict was returned into court, "at an adjourned March term, 1874, of said court, on the first day thereof, being the 13th day of April, 1874." After the verdict was returned, on the same day, the appellant made a motion for a new trial, in the following words:

"And defendant moves the court for a new trial herein,

for reasons to be filed by the second day of the next term of this court."

Afterwards, at the June term of the court, 1874, being the 15th day of June of said year, the appellant filed his motion and written causes for a new trial, together with numerous affidavits in support of the motion.

The appellee then entered a *remittitur* as to the whole amount of the verdict, except the sum of six thousand five hundred dollars. The court overruled the motion for a new trial, the appellant excepted, and ninety days were given to prepare and file his bill of exceptions. Judgment on the verdict, and appeal to this court.

The appellee insists that the record does not show any proper application made for a new trial at the term the verdict was rendered, nor any proper motion made for a new trial upon written causes filed at the time of making the motion.

It does not appear that the motion for a new trial, made by appellant, at the term the verdict was rendered, was in writing. For aught that is shown by the record, it might have been made verbally and entered on the order-book by the clerk; but it does appear clearly that no written cause was at that term filed with the motion. The statute upon the subject is as follows:

"Sec. 354. The application for a new trial must be made at the term the verdict or decision is rendered.

"Sec. 355. The application must be by motion, upon written cause, filed at the time of making the motion." 2 Rev. Stat. 1876, p. 183.

The first construction given to these sections by this court, we believe, was in the case of *Addleman* v. *Erwin*, 6 Ind. 494, wherein it was held that a motion for a new trial, not being in writing, could not be noticed. This ruling has been followed in numerous cases. *The Madison, etc., R. R. Co.* v. *The Trustees, etc.*, 8 Ind. 528; *Kirby* v. *Cannon*, 9 Ind. 371; *Thompson* v. *Shaefer*, 9 Ind. 500; *Howes* v. *Halliday*, 10 Ind. 339; *Lagro, etc., Plank Road Co.* v. *Eriston*,

10 Ind. 342; *Nave* v. *Nave*, 12 Ind. 1; *Stevens* v. *Nevitt*, 15 Ind. 224; *Shover* v. *Jones*, 32 Ind. 141; *Whaley* v. *Gleason*, 40 Ind. 405.

By the practice established under our code by these decisions, it is clear that in this case no proper motion for a new trial was made at the term the verdict was rendered, for the reason that no written cause was filed at the time of making the motion.

The question whether it is within the power of the court to grant time beyond the term to make a motion for a new trial and file written cause at the time of making the motion, remains to be examined. In this case, it does not appear that any such time was granted at the term at which the verdict was rendered. The appellant insists, however, that the bill of exceptions shows that time was given to make the motion for a new trial, and file the reasons therefor, after the term at which the verdict was rendered had expired; but we must first ascertain whether the bill of exceptions is a part of the record or not. Waiving that question for the present, and for the purpose of more thoroughly examining the point made by the appellant, on looking into the paper purporting to be a bill of exceptions, filed at a subsequent term, we find the following statement, viz.: " And the defendant gave notice that he would move for a new trial, and time was given him until the June term of said court, in which to file his motion and reasons for a new trial."

We have seen, *supra*, that the statute requires the application for a new trial to be made at the term the verdict is rendered, and that it must be by motion, upon written cause filed at the time. This statute is imperative, and seems to deny the court all power to extend the time beyond the term.

In the case of *McNiel* v. *Farneman*, 37 Ind. 203, it was held, that a motion for a new trial must be made at the term at which the verdict was rendered, unless for a cause discovered afterwards. The same in *Whaley* v. *Gleason, supra;*

*Hinkle* v. *Margerum,* 50 Ind. 240, and *Greenup* v. *Crooks,* 50 Ind. 410.

In the criminal practice, under section 120, 2 Rev. Stat. 1876, p. 405, it has been held that the court has no power to grant time to file a bill of exceptions beyond the term at which the trial is had. *Stewart* v. *The State,* 24 Ind. 142; *The State* v. *Harper,* 38 Ind. 13; *Kiphart* v. *The State,* 42 Ind. 273. The words used in section 120, above cited, in reference to bills of exceptions, are analogous to those used in sections 354 and 355, in reference to motions for a new trial; and we think, in that respect, a similar construction should be given to all the sections.

With the language of the code before us, and the decisions made under it, we are constrained to hold that the court, in a civil action, has no power, without the agreement or waiver of the parties, to grant time to make an application for a new trial, by motion, upon written cause filed, beyond the term at which the verdict or decision is rendered, unless for a cause afterwards discovered. But when a trial is pending at the close of the term, the court may progress with it until it is concluded, and the additional time thus required will be held to be within the legal term. With this construction we think no hardship will follow for want of time to apply for a new trial by motion, upon written cause filed at the time of making the motion, and within the term at which the verdict or decision is rendered. Upon this view, of course, no question arising under the motion for a new trial can be considered.

The following assignments of error in this case, however, are properly made, without a motion for a new trial:

1. The complaint does not state facts sufficient to constitute a cause of action.

2. The first paragraph of the complaint does not state facts sufficient to constitute a cause of action.

3. The second paragraph of the complaint does not state facts sufficient to constitute a cause of action.

4. The court erred in sustaining the demurrer to the third paragraph of appellant's answer.

5. The court erred in overruling the demurrer to the appellee's amended second paragraph of reply.

The first three assignments raise the question of the sufficiency of the complaint, as a whole, and of each of its paragraphs.

The first paragraph of the complaint is brought by the administratrix of the deceased, against his surviving partner, to recover the value of certain assets belonging to the partnership, which, it is alleged, the surviving partner has refused to account for, misapplied and converted. In such cases, as the right of the administratrix is only to the share of the deceased partner, after the partnership debts are paid, and its affairs finally settled, and the shares of the partners ascertained, the complaint should contain allegations of these facts, in proper traversable averments, and show a demand made, or a proper excuse for not making a demand, before suit is brought. As the first paragraph contains none of these averments of fact, properly made, it is insufficient. The principle governing such cases is familiar and well established. *Skillen* v. *Jones*, 44 Ind. 136; *Cobble* v. *Tomlinson*, 50 Ind. 550.

The second paragraph of the complaint contains substantially the same allegations as those contained in the first paragraph, with some additional averments. There is an attempt to charge fraud against the appellant, but it is feebly done. That he purchased large and valuable tracts of land, took the titles in his own name, and sold them at large profits, was in the line of the partnership. That he took charge of the more active part of the business, had control of the assets, books and accounts of the firm, was according to his right and duty under the partnership agreement. There is no averment that he ever denied access to the books to the appellee or to any one who had a right to see them. That the appellee was ignorant of the condition of the partnership affairs, is not shown to have been the fault

of the appellant. It is nowhere averred that the appellant knew the representations he made to the appellee were false, or that she believed them to be true; for aught that is shown, he might have believed them to be true and the recommendations he made the best that could be done for the firm. Allowing the stock of goods in the store to run down, as sales were made, was not wrong, having in view the final settlement of the partnership. These allegations are not sufficient to constitute fraud. Besides, if the fraud was well alleged, it should be shown that the appellee took advantage of it promptly upon its discovery. She should have disaffirmed the agreement at the earliest practicable moment after the discovery of the cheat. In this cause, the fraud, if any, must have been practised upon her before or at the time the agreement was made, September 28th, 1868; this suit was not commenced till the 24th of November, 1872, a period of over four years afterwards. This delay, unexplained, is too long, and is fatal to an action founded upon fraud. *Stedman* v. *Boone*, 49 Ind. 469; *Patten* v. *Stewart*, 24 Ind. 332.

There is no allegation that the partnership had been finally settled, its debts paid, and a balance found due the appellee as administratrix. The averment that the assets in the hands of the appellant, as surviving partner, "amounted in value to seventy-five thousand dollars, that at the time, the indebtedness of the firm was less than five thousand dollars, which had all been paid out of the assets," is not sufficient. The mere payment of its debts is not necessarily a final settlement of a partnership; there might have been debts to collect, accounts to settle and statements to make, before the final condition of the firm could be known. The averment does not show that anything was due the administratrix of the deceased partner; and no demand to give the surviving partner an opportunity to show the condition of the firm, and make a settlement, nor any excuse for not making such demand, is shown to have been made or to have existed, before the commencement of the action. Besides,

the second paragraph of the complaint shows that a settlement had been made between the parties to this action before the suit was commenced, and does not aver sufficient facts to show that said settlement is not still in force, or that the agreement has not been performed. It is true, as the appellee insists in her brief, that she might have pleaded her complaint without setting out the agreement of settlement; but as she has set it out and shown that it once was valid, it behooves her to show that it is no longer in force. A complaint that carries its answer upon its face is not sufficient. It is not averred that any demand to rescind the agreement or offer to restore what had been received under it had been made. For any thing that is shown in the complaint, the appellant may have performed his part of the agreement, and the appellee have been in the full enjoyment of its benefits.

It is strongly urged in behalf of the appellee that the action is founded upon the obligation of the appellant as surviving partner, and that the agreement of settlement is no more than a receipt for so much on what is due to the appellee as administratrix, which may be explained, varied, contradicted or overthrown by parol evidence; but we are unable to see the agreement in that light. A receipt is the written acknowledgment of the receipt of money, or a thing of value, without containing any affirmative obligation upon either party to it—a mere admission of a fact, in writing; but when a receipt contains stipulations which amount to a contract, it becomes a contract, and must be governed by the law of contracts, and can be avoided only by fraud, mistake, failure of consideration, rescission, or some way known to the law. *Jones* v. *Clark*, 9 Ind. 341; *Barickman* v. *Kuykendall*, 6 Blackf. 21 ; *Sherry* v. *Picken*, 10 Ind. 375; *Pribble* v. *Kent*, 10 Ind. 325.

In our opinion, the second paragraph of the complaint cannot be held sufficient. *Page* v. *Thompson*, 33 Ind. 137 ; *Skillen* v *Jones*, 44 Ind. 136; *DeFord* v. *Urbain*, 48 Ind. 219; *Jagers* v. *Jagers*, 49 Ind. 428; *Stedman* v. *Boone*, 49

Ind. 469; *Cobble* v. *Tomlinson,* 50 Ind. 550; *Langsdale* v. *Girton,* 51 Ind. 99.

We do not examine the remaining two assignments of error, which are properly in the record. As the complaint must be amended, the following pleadings must necessarily be reconstructed. It is not likely, therefore, that the same questions will again arise in the case.

The judgment is reversed, with costs, cause remanded, with instructions to dismiss the action, unless leave is asked to amend the complaint.

Petition for a rehearing overruled.