## THE KANSAS CITY & OLATHE RAILROAD COMPANY v. DICEY HICKS.

RAILROAD RIGHT-OF-WAY; *Damages; Estoppel.* The city council of Olathe passed an ordinance authorizing the Kansas City & Olathe railroad company to construct its road along Willie street, in that city, providing therein that the company should first pay to the city clerk $3,500, to be distributed among the lot-owners on the street as compensation for their damages resulting from the construction of the road. The amount was so paid, and apportioned as provided in said ordinance. The ordinance further provides that when so apportioned, the city clerk should pay the amounts to the respective lot-owners, taking from them receipts specifying that the amounts so received were in lieu of all claims for damages by reason of the construction of said road. After the stakes had been set in the street in front of plaintiff's lots, and after work had been commenced on the street on either side of said lots, plaintiff received from the city clerk the amount so apportioned, and executed her receipt,

which recited that the amount received was "in full payment and satisfaction of any claim I may or might have for damages to lots ——, against said railroad, by reason of the construction of said railroad." The road was thereafter finished in a skillful and proper manner, and though there was a fill in front of her lots of five or six feet, yet such fill was necessary to bring the track to a proper grade. *Held,* That in the absence of fraud, deception and concealment, although she did not understand the meaning of the stakes, and did not know that a fill was contemplated, she was estopped from any further claim against the railroad company for damages on account of the construction of its road, and the obstruction of access to her lots.

*Error from Johnson District Court.*

AT the November Term, 1882, of the district court, plaintiff *Hicks* recovered a judgment against the *Railroad Company,* which brings the case here. The opinion states the nature of the action, and the facts.

*S. O. Thacher,* for plaintiff in error.

*Gill & Parker,* for defendant in error.

The opinion of the court was delivered by

BREWER, J: The defendant in error was the owner of certain lots on Willie street, in the city of Olathe. The plaintiff in error, defendant below, constructed its railroad track along said street and in front of said lots. Directly in front of her lots the track was raised some five or six feet above the grade of the street. She brought her action to recover damages to her lots by reason of this construction of the railroad track. The case was tried by the court without a jury, special findings of fact were made, and a judgment was rendered in her favor of $220. The case turns on the scope and effect to be given to a release or receipt executed by the plaintiff, for it cannot be doubted that independent of such receipt she could recover damages for the obstruction of access to her lots by reason of the embankment or fill in front of them. (*Railway Co. v. Twine,* 23 Kas. 585.) The receipt or release reads as follows:

OLATHE, KANSAS, Sept. 8, 1881.

Received of the Kansas City & Olathe Railroad Company, by the hands of J. W. Hare, city clerk, fifty-five dol-

lars, which I hereby accept in full payment and satisfaction of any claim I may or might have for damages to lots Nos. 10, 13, 14, 17 and 18, in block No. 28, city of Olathe, Kansas, against said railroad, by reason of the construction of said railroad.   $55.

Attest: J. W. HARE.

DICEY X HICKS."
mark.

Her

As further facts, it is found that the city council, by ordinance, duly authorized the defendant to construct this railroad track along said street; which ordinance provided that before constructing its road, the defendant should pay the city clerk $3,500 as and for the damages which would accrue to owners of improved property on said street, and that the said money should be apportioned among such owners by five disinterested householders, duly sworn to impartially appraise the damages, etc.; and further, that such money should be paid to the owners by the clerk, "taking their receipts for the same, which receipts shall specify the amount received by them respectively is in lieu of all claims for damages to their property by reason of the construction of said railroad;" also that such sum was paid to the city clerk, and by him distributed; that the basis of the distribution was the value of the respective properties, and that plaintiff knew this when she received the money and gave the above receipt; also that the fill or embankment in front of plaintiff's lots is necessary to bring the railroad track to a proper grade, and that such track is in first-class condition, and the locomotives and trains thereon are operated in the most skillful and approved maner; further, that at the time of giving such receipt no work had been done on the track in front of her lots, although some had been done on either side, and that certain stakes had been placed on the street in front of her lots, though she did not know what they meant.   The court further found that the damages done to the property by the construction of said railroad amounted to $275, and crediting that with $55 for which the foregoing receipt was given, rendered judgment for the remainder.

The contention of the railroad company is, that such receipt is something more than a mere receipt, and is an accord and satisfaction — a contract by which all claims for damages

arising from the construction of the road-bed are compromised and released. That this is something more than a mere receipt, that it partakes of the nature of a contract, and as such of the conclusiveness of written instruments, cannot be doubted. (*Thompson v. Williams*, ante, p: 114; *Koon v. Knapp*, 8 N. Y. 402; *Railroad Co. v. Welch*, 52 Ill. 183; *Stapleton v. King*, 33 Iowa, 28; *Krutz v. Craig*, 53 Ind. 574.) Indeed, this proposition is conceded by counsel for plaintiff, and their claim is, that as this release was executed before the actual construction of the road, when it released all claim for damages by reason of the construction, it meant a construction in a legal and proper manner, and did not contemplate any illegal and improper construction, or any damages that would result therefrom. They refer us to Comp. Laws 1879, ch. 23, § 47, ¶ 4, in which it is provided that —

"Every railway corporation shall have power: . . . *Fourth*, To construct its road across, along or upon any stream of water, watercourse, street, highway, plank road or turnpike, which the route of its road shall intersect or touch; but the company shall restore the street, highway, plank road or turnpike thus intersected or touched to its former state, or to such state as to have not necessarily impaired its usefulness."

In other words, she received pay for the damages which would have accrued if the company had restored the street to its former condition, or one equally serviceable. She expected to retain the full use of the street for travel and access to her lots, and was only receiving compensation for the annoyance of a railroad track with its passing trains in front of her premises.

The argument is plausible, but not sound. When parties contract in reference to a proposed work, they are presumed to have in mind the work as it is proposed to be done and as its necessities require. It is found that this fill was necessary to bring the track to a proper grade. The work was being done on either side of her lots, and stakes were set in front of them. The work was planned, its necessities known : there is no intimation of fraud, deception, or concealment. She receives

money in full payment and satisfaction of any claim she may have for damages to her lots by reason of the construction of the road. What construction? Why, the construction as planned, as required by the necessities of the situation, as already commenced.

Again, she releases all claims for *damages*. But damages in the ordinary legal sense mean the compensation which the law will award for an injury done. If the law will give no compensation, there is certainly no legal claim for damages. Now if the street is restored to its former condition, or one equally serviceable, the adjoining lot-owner has no claim for damages. Any inconvenience or annoyance is *damnum absque injuria*. (*Railroad Co. v. Garside*, 10 Kas. 552.)

Beyond the receipt is the ordinance. It required from the railroad company a payment of $3,500, not as a mere exaction for the privilege of going through the city, or for the benefit of the lot-owners in general, but for the use of the owners of improved property on Willie street, and for the damages which the construction and operation of the railroad would cause to such property. And it further provided specifically that such owners should give receipts, and that the receipts should state that the amounts received by them respectively should be in lieu of all claims for damages by reason of the construction of the railroad. Is it not reasonable to suppose that this municipal legislation was in view of just such a contingency as in fact arose, and to secure in advance what was deemed suitable compensation by the city council to the several lot-owners?

There is nothing in the record which shows the grade of Willie street. From the fill required in front of plaintiff's lots, and from the testimony in respect to a draw at that place, it is clear that the street was not level; and from the exceptional condition attached to the ordinance in this case, we may fairly assume that it was evident that the construction of a railroad track along this street would require a cut or fill, and that the city chose to secure, in the hands of its officers, an amount which it thought sufficient to cover the damages

resulting from such cut or fill. It is not reasonable to suppose that the city council took this means of compelling a donation to the lot-owners, or even that they intended securing in this way compensation to them for the annoyance of having a railroad track in front of their property. We do not say that the city council might not make such an exaction, or compel compensation in such manner; though if that were all that was intended, we think different language would have been employed in the ordinance. Neither do we hold that the action of the city council and the division made by the householders as provided in the ordinance were conclusive as to the claim of damages of any lot-owner. But we do think that the city intended in this way to secure compensation for damages to the lot-owner, (using the term "damages" in its strict legal sense,) and that when the lot-owner received the money thus provided, and executed his release of all claims for damages, it covered everything resulting from the construction of the road in a skillful and proper manner, and as the necessities of the track required.

Again, while the quotation from ch. 23, *supra*, prescribes the general rule and condition under which railroad companies may construct their track across or upon any street or highway, yet in addition special power is given to cities in this respect. Chapter 19, Comp. Laws 1879, the act in respect to cities of the second class, provides in § 64 that "the council shall have power to regulate levees, depots, depot grounds, and places of storing freight and goods, and to provide for the passage of railways through the streets and public grounds of the city; also, to regulate the crossings of railway tracks, and to provide precautions, and prescribe rules regulating the same; and to regulate the running of railway engines, cars and tracks within the limits of said city, and to prescribe rules relating thereto, and to govern the speed thereof, and to make any other and further provisions, rules and restrictions to prevent accidents at crossings and on the tracks of railways, and to prevent fires from engines."

Now this section vests control in the city council. It may

regulate the line of the track, prescribe how far it shall interfere with the grade of the street; and what the city council authorizes, the adjoining lot-owner may not restrain. Of course it cannot deprive the lot-owner of access to his lot without compensation, or arbitrarily fix the amount of such compensation; but it has such control over the streets that it may authorize a cut or fill, leaving to the lot-owner the unrestricted right of compensation for the damage to his property caused thereby. So that it cannot be said that a cut or fill in a city street, permitted by the city council, is technically illegal.

We therefore think the district court erred in its conclusions from the facts as found, and the judgment will be reversed, and the case remanded with instructions to enter judgment upon the facts found in favor of the plaintiff in error, defendant below, for costs.

All the Justices concurring.