SCHEIBLE *v.* LAW.

NUISANCE, ABATEMENT OF.—*Damages.—Complaint.—Obstruction of Water-course by Dam.—Surplusage.*—In an action by one adjoining proprietor against another, for damages and to abate a nuisance, the complaint alleged that a certain watercourse flowed over the lands of the plaintiff, onto and across those of the defendant; that a certain dam across such watercourse, erected on the lands of the defendant by his remote grantor, had been so increased in height, first by the defendant's immediate grantor, and then by the defendant himself, as to back water upon and over the lands of the plaintiff and others ; that, in reconstructing the dam, the natural channel had been so narrowed by levees, etc., as to impede the natural flow of the water ; and that, in consequence, the lands of the plaintiff had been, and would continue to be, overflowed and rendered unfit for cultivation, and his growing crops damaged.

*Held,* on demurrer, that the complaint is sufficient.

*Held,* also, that a complaint is not rendered insufficient merely because of surplusage contained therein.

SAME.—*Answer of License, by Deed from Plaintiff's Grantor.—Reply Interpreting Deed.—Harmless Ruling on Demurrer.*—The defendant in such action having answered, setting up a deed to the defendant's immediate grantor, from one who was the plaintiff's immediate, and the defendant's remote, grantor, prior to the grievance complained of, for "the right of way for a mill-race, with ground sufficient for abutments of a dam across" such watercourse, the plaintiff replied, setting out the state of facts under which the deed was executed, to assist in its interpretation.

*Held,* on demurrer to the reply, that the defendant was not authorized by such deed to so construct his dam as to injure the plaintiff's lands, and that the overruling of the demurrer, even if erroneous, was harmless.

SAME.—*Uncertainty in Interrogatories and Answers.—Judgment Non Obstante.—Record.*—The jury trying such cause, with their general verdict for the plaintiff, answered certain interrogatories, some of which, with the answers thereto, referred to certain diagrams and maps which had been used on the trial, but were not in the record on appeal to the Supreme Court.

*Held,* that judgment on the answers, notwithstanding the verdict, can not be rendered in such case.

Scheible *v.* Law.

SAME.—It appearing in such case that such watercourse had been so narrowed by the dam as to divide it into two branches, one only of which was crossed by the dam, a special finding that the dam did not extend *across* the watercourse is not inconsistent with the general verdict.

SAME.— *Variance.—Amendment.*—A variance between an immaterial allegation in the complaint and the answer to an interrogatory relating thereto will be deemed, in the Supreme Court, to have been amended below.

BILL OF EXCEPTIONS.—*Filed Too Late.—Record.*—A bill of exceptions filed at a term subsequent to the term at which the cause was tried, without leave granted that it might be so filed, forms no part of the record.

SAME.—*Supreme Court.—Evidence.—New Trial.*—Where, on appeal to the Supreme Court, the evidence is not all in the record, no question is presented as to whether or not the evidence sustains the verdict.

SAME.—*Refusal to Strike Out.—Harmless Error.*—Error in refusing to strike out parts of a pleading is not available in the Supreme Court.

From the Shelby Circuit Court.

*B. F. Love, K. M. Hord, A. Blair* and *C. Sprague,* for appellant.

*O. J. Glessner* and *T. W. Woollen,* for appellee.

PERKINS, J.—Suit by the appellee, against Scheible and Scheible, to recover damages occasioned by an alleged nuisance, and to procure the abatement of the same.

We copy the main portions of the complaint:

"The plaintiff, Joel Law, complains of Jacob M. Scheible and George C. Scheible, and says that the plaintiff, Joel Law, is now, and has been for many years last past, to wit, since the —— day of ——, 1861, seized in fee of the following described real estate, to wit: The north half of the north-east quarter of section thirty-two (32), in township twelve (12), range six (6) east, and that the defendants are, and have been since the 20th day of April, 1870, seized in fee of the following real estate, to wit: Part of the east half of the north-west quarter of section thirty-two (32), in said town and range aforesaid; that all of said real estate is situated in Shelby county, in the State of Indiana; that Blue River meanders through said lands of said defendants, and in part forms the dividing line between the lands of defendants and the lands

of plaintiff; that, in the year 1836, one Samuel Heistand built a mill on, and a mill-dam across, said river, on the lands now owned by said defendants, at the head of the race, six hundred feet above and north of the mill; that said dam, since said time until the —— day of ——, 1868, was kept up and maintained at a height of not exceeding four feet ten inches; that on the ——day of ——, 1868, one Joseph F. Fisher, the immediate grantor of said defendants, unlawfully raised said dam to the height of six feet aforesaid, and, on the 25th day of June, 1871, said defendants unlawfully built and constructed said dam to the height of eight feet ten inches, and from that time until the present said defendants have maintained and still maintain said dam at said last named height, to the great injury of the plaintiff and others having a common interest with him in the subject of this action, in this, to wit: It has [caused ?] and will cause large portions of plaintiff's lands, and lands adjacent thereto, to be overflown with water at all seasons of the year; and in time of freshets it has [caused] and will cause to plaintiff and others irreparable damage, by washing away soil, crops and improvements on lands; that said defendants, in reconstructing and raising said dam as aforesaid, so built and constructed the abutments, levees and attachments thereto, as to contract and narrow the channel of said river, thereby impeding the flow of the water at that point much more than it would have been impeded by a mere increase in the height of said dam; that, by reason aforesaid, plaintiff, during the years of 1870, '71 and '72, has, by the loss of crops and otherwise, sustained great damage, viz., in the sum of one thousand dollars. Wherefore," etc.

The plaintiff subsequently dismissed his suit as to defendant George C. Scheible.

A demurrer to the complaint, for want of facts, etc., was overruled, and exception entered.

Answer, in five paragraphs:

1. Admitting the existence of the dam and race, but claiming the right to maintain them, and giving a history of the title to the land, from its purchase by James M. Elliott, and its conveyance to him, by deed from Thomas Wray, on the 9th of May, 1848;

2. Adverse possession for twenty years;

3. Statute of limitations;

4. License, and estoppel;

5. General denial.

A demurrer to the affirmative paragraphs of answer was overruled, and exceptions entered.

The following deed was made a part of the first paragraph of the defendant's answer to the complaint. The deed was executed on the 9th of June, 1859:

"William Law conveys and warrants to Samuel W. Elliott, of Shelby county, Indiana, for the sum of one hundred dollars, the following real estate in Shelby county, Indiana, to wit: The right of way for a mill-race, with ground sufficient for abutments of a dam across Blue River, wherever he should need it, and the right of entry of my land to build the same and keep it in repair, and all stone, gravel, earth or timber he may require for the repair of said mill-race and dam, levees, or banks, together with the right to extend and alter the said race and dam should the change of the river at any time make it necessary; the said Elliott to pay a reasonable compensation for all valuable timber that he should take; said land lying in sections 29 and 32, town 12, range 6."

The deed was acknowledged and recorded.

Reply in denial to all the affirmative paragraphs of the answer, and, by a second paragraph, to the first paragraph of the answer, setting out the state of facts under which the deed set out in the first paragraph of answer was made, for the purpose of aiding in its interpretation and construction, and showing the extent of its intended operation, as not enlarging the right to overflow adjoining land.

A motion to strike out, and demurrer to said second paragraph of reply, were overruled, and exceptions reserved.

Trial by jury. Verdict and answers to interrogatories as follows were returned into court:

" We, the jury, find for the plaintiff, Joel Law, and assess his damages at two hundred dollars;" and answer interrogatories propounded by the plaintiff as follows:

" 1. State who was the owner of the Marietta Mill property, mentioned in the complaint, at the commencement of this suit.

" Ans. Jacob M. Scheible.

" 2. State what was the height of the dam complained of, at the time William Law made the deed to Samuel W. Elliott of the right to build the new dam and race.

" Ans. Four feet.

" 3. State the height of the dam complained of, June 20th, 1872, at the time this suit was brought.

" Ans. Seven feet and a half.

" 4. Did Jacob M. Scheible, the defendant, after he became the owner of said mill, and before the commencement of this suit, raise said dam? and, if so, how much ?

" Ans. Yes; three feet.

" 4½. Is the dam at 'B,' above mill on map 'A,' used as a waste dam ?

" Ans. Yes.

" 5. What is the present height of the dam complained of?

" Ans. Seven feet.

" 6. Were the lands of the plaintiff overflowed by back water from the mill pond or race, at any time prior to 1871, at any ordinary stage of water ?

" Ans. No.

" 7. Are they now so overflowed, at an ordinary stage of water ? and, if so, since when have they been so overflowed ?

" Ans. Yes; since August 1st, 1871.

" 8. If the jury find that the lands of the plaintiff have been overflowed by reason of the raising of the dam by the defendant, state how much damage the plaintiff had sustained, up to the 20th day of June, 1872, by reason of such overflow.

" Ans. Two hundred dollars.

" 9. State if the dam in controversy in this suit, when first erected, was across the original channel of Blue River.

" Ans. Yes.

"10. State if the plaintiff's lands are overflowed from water coming down from the direction of Ague creek and the levee built on William Law's land?

" Ans. No.

" 11. State how much of the height of the dam must be cut down to relieve the lands of the plaintiff of being overflowed at an ordinary stage of water.

" Ans. Thirty inches. "

And the jury returned answers to interrogatories propounded by the defendant, as follows:

" 1. What is the distance from the mill mentioned in the plaintiff's complaint to the dam in controversy?

" Ans. Seven hundred and thirty feet.

" 2. Did William Law, on the 9th day of June, 1859, execute to Samuel W. Elliott a deed, a copy of which is filed with the defendant's first paragraph of answer, and marked ' Exhibit C?'

" Ans. Yes.

" 3. If your answer to interrogatory two should be yes, was he, the said William Law, at the time he executed said deed to said Elliott the owner of the tract of land described in plaintiff's complaint, being the north half of the north-east quarter of section 32, township 12 north, of range 6 east, in Shelby county, Indiana?

" Ans. Yes.

" 4. Was said William Law, at the time he executed

said deed to said Elliott, the owner of the south-east quarter of section twenty-nine, township twelve north, of range six east, in Shelby county, Indiana?

"Ans.   Yes.

"5.   Did Samuel W. Elliott, after said deed was executed to him, build a dam across the channel of Blue River, in said section twenty-nine, township and range aforesaid, at the point 'D' on map 'A'? and from and immediately above said point where he built said dam, did he dig a mill-race to and into a bayou, at the point 'C' on said map, and through said bayou did he conduct the water in and down said bayou to his mill by and past the point 'B,' by which he propelled his said mill? and, if so, when did he dig and construct said race, and thereby conduct said water from said Blue River to his said mill, through said race so dug and constructed by him?

"Ans.   Yes; and was dug in 1859.

"6.   Was said race, so dug and constructed by him from said point 'D' on said map to said point 'C,' and the bayou, into which said race was dug at said point 'C,' and from that point down said bayou to the south side of section twenty-nine, on lands owned by said William Law, at the time said race was dug and constructed down said bayou? Did said William Law own the tract of land described in plaintiff's complaint, at the time said race was dug and constructed?

"Ans.   Yes.

"7.   Was the dam, referred to in plaintiff's complaint, and of which he complains, across Blue River at the time the plaintiff commenced this suit?

"Ans.   No.

"8.   Was the dam, complained of by the plaintiff in his complaint, across Blue River at the time the defendant or defendants, or either of them, became the owner or owners

of the mill mentioned in the complaint, or at any time since?

"Ans. No.

"9. Was the dam, complained of by the plaintiff in his complaint, across Blue River at the time said Fisher became the owner of said mill, or at any time since?

"Ans. No.

"10. Was the dam complained of by the plaintiff in his complaint, across Blue River at the time said Fisher raised the same, if he did raise said dam?

"Ans. No.

"11. At the time said race was dug from the point 'D' to the point 'C,' into said bayou at the point 'C,' and the water conducted from said Blue River from the point 'D,' down said dug race to point 'C,' and down said bayou to said mill, did Blue River run either through said dug race or in said bayou, from the point 'C' to said mill at any point from 'D' to said mill? Or did not said Blue River, at that time, from said point 'D' to said mill, run in a channel west of said dam and race at said point 'B' on map 'A'?

"Ans. Yes; Blue River runs from the point 'D' in a channel west of said dam and race, at said point 'B.'

"12. How long has Blue River run from point 'A' to and opposite the mill, west of said dug race and west of said bayou, from the point 'C' to the mill and west of point 'B' at the dam?

"Ans. Blue River run west of point 'C' and west of point 'B' since the year 1859.

"13. When was the deed marked 'Exhibit C' recorded in the recorder's office of Shelby county, Indiana?

"Ans. On the 9th day of June, 1859.

"14. Has not said dam, at the point 'B.' ever since said new race was dug, constituted a part of the west bank and side of defendant's race to said mill?

" Ans.   Yes ; the dam has been a part of said west bank of said race, and also a waste dam.

" 15.   What is the fall from the point ' D ' to the mill?

" Ans.   Six feet and nine-tenths of a foot.

" 16.   If the water is thrown onto the plaintiff's tract of land by the dam in controversy having been raised by the defendants, or by Fisher, is it not thrown on the plaintiff's land by being backed up from the race through a tract of land adjoining said race, belonging to Comstock, lying south of and adjoining the plaintiff's tract of land, and from off said tract of land belonging to said Comstock, onto the plaintiff's tract of land described in the complaint?

" Ans.   About two-thirds of the quantity of water that causes the overflow over the plaintiff's land comes over Comstock's land, and one third of the water which causes said overflow comes from bayou ' A.'

" 17.   If the dam in controversy has been raised by the defendants, or by Fisher, or either of them, so as to throw the water from the race or mill-pond onto the tract of land adjoining the plaintiff's tract of land, so as to back the water over said lands belonging to said Comstock, onto the plaintiff's tract of land, then how much would the dam have to be cut down so as to prevent it from throwing the water back on the plaintiff's tract of land described in the complaint, and leaving the dam such height as to back the water up on the Comstock tract, but not such a height as to throw waters on the plaintiff's land adjoining and above the Comstock tract?

" Ans.   The dam should be taken down thirty inches when on a level.

"18.   If the defendants and Fisher, or either of them, raised the dam in controversy so as to throw the water onto any part of the plaintiff's tract of land described in the complaint, that was suitable for cultivation before they so

raised the dam, then how much of such lands of the plaintiff' that were fit for cultivation before they, or either of them, raised the dam, was materially injured for cultivation by throwing the water onto the same by the raising of said dam by the defendants and said Fisher, or either of them? Give the number of acres, if any.

" Ans. About fifteen acres of land.

"19. If, by the raising of the dam in controversy by the defendants or said Fisher, the waters were thrown onto any of the plaintiff's lands described in the complaint, that were fit for cultivation previous to the raising of said dam, and before the commencement of this suit, then how much was the plaintiff damaged thereby from the 1st of August, 1871, to the 20th day of June, 1872, at the time of the commencement of this suit?

"Ans. At two hundred dollars.

" 20. Is the stream of water, marked on map 'X' as Miller's Branch, a natural stream of water?

" Ans. Yes.

" 21. How much lower, if any, is the lowest point of the dam in controversy, than the east side of the race or mill-pond from the mill up to point 'C' on map 'H,' except the mouth of bayou, P. O. Q?

" Ans. The bank is from six inches to four feet higher than the lowest point in the dam."

The defendant moved for judgment on the special findings, which was overruled, as was also a motion for a new trial. Exceptions were entered. Final judgment was entered for the plaintiff, on the general verdict.

The defendant moved " to strike out all that part of the judgment and order of the court, in the above entitled cause, which relates to the cutting down of the defendant's " mill-dam in question in this suit, because the verdict of the jury does not warrant or authorize the above designated part of said judgment or any part thereof;

which motion the court overruled, to which ruling the defendant excepted at the time, and filed his bill of exceptions, which was then and there signed and sealed, July 8th, 1875.

An appeal was duly prosecuted to the Supreme Court by the defendant, in which court he has assigned errors as follows:

1. Overruling the demurrer to the complaint;
2. Overruling the demurrer to the second paragraph of reply;
3. Overruling appellant's motion for judgment on special findings of the jury;
4. Overruling motion for a new trial;
5. Overruling motion to strike out;
6. Overruling motion to strike out.

We proceed to consider the errors assigned.

The demurrer was properly overruled to the complaint. Damage for special injury from a public nuisance may be recovered by an individual. *Pettis* v. *Johnson*, 56 Ind. 139. See *Helwig* v. *Jordan*, 53 Ind. 21; *Mansur* v. *Haughey*, 60 Ind. 364; *Haag* v. *The Board*, etc., 60 Ind. 511.

The complaint in this case contained much surplusage, but it contained allegations showing a cause of action, and the surplusage did not vitiate it.

If the court erred in overruling the demurrer to the second paragraph of the reply, as to which we express no opinion, the error was harmless. The deed, made an exhibit in the answer, did not, by its terms, authorize the grantee to raise a dam to a height that would create a nuisance, by overflowing the lands of the grantee adjoining those conveyed. The case of *Howard* v. *Bates*, 8 Met. 484, is not at all in point.

The court did not err in rendering judgment on the general verdict. The law is, that "When a trial by jury has been had, and a general verdict rendered, the judgment

must be in conformity to the verdict," (2 R. S. 1876, p. 186, sec. 370,) unless there has been, also, a special verdict or finding. When there has been such, "if the special finding of the facts is inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment acccordingly." 2 R. S. 1876, p. 172, sec. 337.

And it is established by judicial decisions, that "The special findings of the jury override the general verdict only when both can not stand; and this antagonism must be apparent upon the face of the record, beyond the possibility of being removed by any evidence legitimately admissible under the issue, before the court can be called upon to give judgment against the party who has the general verdict in his favor." *Amidon* v. *Gaff,* 24 Ind. 128; *Delawter* v. *The Sand Creek Ditching Co.,* 26 Ind. 407; *Skillen* v. *Jones,* 44 Ind. 136; *Campbell* v. *Dutch,* 36 Ind. 504; *Morse* v. *Morse,* 25 Ind. 156; *The Bellefontaine R. W. Co.* v. *Hunter,* 33 Ind. 335; *Donohue* v. *Dyer,* 23 Ind. 521; *The Board of Commissioners, etc.,* v. *Kromer,* 8 Ind. 446; *Wright* v. *Hughes,* 13 Ind. 109; *Manning* v. *Gasharie,* 27 Ind. 399; 2 R. S. 1876, p. 172, note; *Graham* v. *Graham,* 55 Ind. 23.

It has been decided, also, that "Where the special finding of a jury, on account of the language of an interrogatory and the answer thereto, is so uncertain that the meaning can not be definitely ascertained, such special finding will not warrant the court in disregarding the general verdict, and rendering judgment on the special finding." *Comer* v. *Himes,* 49 Ind. 482; 2 R. S. 1876, p. 173, note.

A mere perusal of the interrogatories propounded by the defendant, and the answers thereto, will satisfy any one that many of them are meaningless, when read from the record, in the absence of the lettered maps and diagrams upon which they were asked and answered. Those maps and diagrams are not in the record.

We think the antagonism between the general verdict

and the answers to interrogatories is not irreconcilable. The suit is for the raising of a dam across Blue River. The interrogatories ask, Was the dam across Blue River? and the answers are, No. Now, two facts have appeared in the case, viz.: That Blue River had been narrowed at the point of the dam by artificial means, so that a shorter dam sufficed, and that that river had been changed from its original bed, had been divided into two streams, etc. Now, the interrogatories asked for a conclusion, an opinion rather than a fact, on the state of facts existing. Instead of asking a question, making it definite as to the locality of the dam, the branch of the divided stream it was across, the question was asked, Was the dam across Blue River? The jury would answer such an interrogatory according to their opinion as to which division, which branch of the divided stream, should then be called Blue River. Or, from the narrowing of the stream mentioned, the answer might have meant that the dam did not extend entirely across what they understood to be Blue River.

It is also said that the answers show a fatal variance—that the complaint alleges that the original dam was built six hundred feet from the mill, while they now, by measurement, make the distance of the dam seven hundred and thirty feet. If the exact distance of the mill from the dam was a material allegation, we think the complaint was amendable, in this particular, and may be regarded as amended.

The court did not err in overruling the motion for judgment on the special findings or answers to interrogatories.

We proceed to the motion for a new trial.

The cause was tried and verdict in it rendered at the March term, 1875. The motion for a new trial was made and overruled at the May term, 1875. The bill of exceptions was filed in July, 1875. No bill of exceptions was

taken at the term at which the cause was tried, showing erroneous rulings occurring on the trial, nor does time, beyond the term, appear to have been given to prepare one. Such errors, therefore, if they occur, are not shown by the record. 2 R. S. 1876, p. 176, sec. 343. Nor, can we determine whether the verdict was sustained by the evidence, because it appears by the record that the evidence is not all contained in it. Certain lettered maps and diagrams were used in evidence, which are not in the record. How important, necessary even, they were to enable the jury and the court to apply, and duly appreciate the force of, oral testimony given in the cause, in reference to localities and distances, has been made unmistakably manifest by the answers to interrogatories which are embodied in the record.

The fifth and sixth alleged errors of the court, in refusing to strike out parts of pleadings, are unavailable. *Galvin* v. *The State, ex rel.,* 64 Ind. 96, and cases cited.

The judgment is affirmed, with costs.

Opinion filed at November Term, 1878.
Petition for a rehearing overruled at May Term, 1879.