[No. 11215.  Department One.  February 16, 1914.]

JENNIE I. PIERCE, *Respondent*, v. SEATTLE ELECTRIC
COMPANY *et al., Appellants.*[1]

RELEASE AND DISCHARGE—PROCURED BY FRAUD—EVIDENCE—QUES-
TION FOR JURY.  Whether fraud in securing a release of damages for
personal injuries is established by clear and convincing evidence, is
a question for the jury, where the plaintiff and her daughter testi-
fied that plaintiff, who was seriously injured, relied upon the state-
ment of the company's physician, who had been treating her, that
she would be well in two weeks, and of the claim agents that $500
then paid would be considered as paid on account if she was not
well in two weeks, the release was not read over to her, and she
was unable to read it or sign it without assistance, although this
evidence was contradicted.

NEW TRIAL—EXCESSIVE DAMAGES—ABUSE OF DISCRETION.  It is an
abuse of discretion to order a new trial, unless a verdict for $7,900
for personal injuries resulting in traumatic neurasthenia be re-
duced to the sum of $5,000, largely upon a personal conversation
with one of the witnesses outside the record, and because of a mis-
interpretation of opinions by the supreme court in other cases.

DAMAGES—EXCESSIVE VERDICT—TRAUMATIC NEURASTHENIA.  A ver-
dict for $7,900 for injuries to the back resulting in traumatic neu-
rasthenia, is not excessive, where it appears that for 21 months the
plaintiff had been confined to her bed and unable to care for her-
self, her recovery was exceedingly doubtful, and would require
years.

Cross-appeals from a judgment of the superior court for
King county, Smith, J., entered January 7, 1913, granting
a new trial after the verdict of a jury rendered in favor of
the plaintiff, in an action for personal injuries sustained by
a passenger in alighting from a street car.  Reversed on
plaintiff's appeal.

*James B. Howe* and *A. J. Falknor*, for appellants.
*Walter S. Fulton* and *Arthur E. Griffin*, for respondent.

[1]Reported in 138 Pac. 666.

MAIN, J.—The purpose of this action was to recover damages on account of personal injuries alleged to be due to the negligence of the defendant, its agents, or employees.

On March 3, 1911, the plaintiff, a widow, then 40 years of age, was living with her 16 year old daughter at the Newberry apartments, on 16th avenue, in the city of Seattle. At about 8 o'clock p. m. on this day, the plaintiff and her daughter boarded an inbound Capitol Hill car for the business section of the city. When the car reached the corner of 3d avenue and Seneca street, it stopped for the purpose of permitting the plaintiff and her daughter to alight. The daughter descended the steps first. As the plaintiff was attempting to alight, she claims the car started, causing her to fall, striking her back and spine upon the steps of the car; and then pitching forward, her head struck the pavement. As the gates were closed, her foot was caught therein, and she was dragged along on the pavement until the car could be stopped.

The evidence as to the manner of the accident and the cause which produced it is conflicting. Whether the injury sustained by the plaintiff was due to the negligence of the defendants was a question of fact, and was for the jury to determine.

After the accident, the plaintiff and her daughter returned to their home on a street car. On the day following the accident, a Mr. Young, an assistant claim agent for the defendants, called upon the plaintiff at her apartments. Mr. Young then suggested that she see the defendants' physician, Dr. Willis. On the same day, Dr. Willis called at the home of the plaintiff; but she, not wishing to be treated at that time, was advised by the doctor that, if she wished treatment, she could send for him. A day or two later, at the plaintiff's request, the defendants' physician called and gave her some medicine. After this time, Dr. Willis called at intervals of a day or two, until about the end of March, 1911. Mr. Young also called three or four times between the

time of the accident on March 3, 1911, and March 27, 1911. About the middle of March, a Dr. Snow, one of the plaintiff's neighbors and acquaintances and a practicing physician and surgeon, called upon the plaintiff at her request, two or three times. After learning the fact that she was being treated by Dr. Willis, he declined further to attend her. Dr. Snow advised her that she was suffering from a severe nervous shock, and that such cases sometimes lasted a long time.

On March 27, 1911, Mr. Young, accompanied by Mr. Carson, the defendants' claim agent, called upon the plaintiff for the purpose of effecting a settlement. The matter of a settlement was then discussed between the plaintiff and the two claim agents. On the following day, Mr. Young and Mr. Carson again went to the home of the plaintiff with a release prepared, ready for signature, and a check drawn in the plaintiff's favor for $500. When they arrived, a neighbor of the plaintiff, a Mrs. Brier, who had a son in the employ of the company, was there.

As to what happened on this occasion, the plaintiff and her daughter testified substantially to the following effect: That Mr. Carson gave the plaintiff a check for $500, and requested her to sign a paper; that she could not read it; that she inquired what it was, and he said it was the customary receipt required by the company to be signed when they paid money; that the paper was not read in full; that the portion which provides that the company should be released from all claims for damages was not read; that the plaintiff then stated to Mr. Carson that she did not know how seriously she was hurt, and that he replied that she was not injured much, that Dr. Willis had said that she would be well in two weeks and that all she needed was rest and quietness; that she then said to Mr. Carson that, if she would be well in two weeks, $500 would be sufficient, but if she was not, that she would not wish to have him understand that she was releasing any claim for damages; that he thereupon replied that they un-

derstood it that way, and in case she was not well in two weeks, the $500 should be understood as payment on account; that she then attempted to sign the release, but, on account of the pain in her arms and limbs, could not do so; that, after she had taken some medicine which Dr. Willis had prescribed for pain, she again tried to sign, but could not on account of the pain in her arm and her hand shaking; that she then said to Mr. Carson that she could not sign it; that he then stated that perhaps he could help her; that he then braced her arm and took hold of her wrist, and she then forgot how to spell her name; that the instrument was not fully read to her. The plaintiff and her daughter also testified that Dr. Willis had told the plaintiff that she was not injured much, and that she would be well in two weeks. As to what occurred at this time, the plaintiff and her daughter are contradicted by the two claim agents and Mrs. Brier.

It appears to be admitted that, as a part of the settlement, the plaintiff was to be taken to the hospital for a period of two weeks at the defendants' expense; but this was not included in the written release.

The plaintiff testified that she was induced to sign the instrument, first, because Dr. Willis had repeatedly told her she would be well in two weeks, and this was reiterated by Mr. Carson at the time; and second, because she agreed with Mr. Carson that, if she was not well in two weeks, it should not be a settlement in full but simply a payment on account.

On March 29th, the day following, the plaintiff was taken to the Seattle general hospital, where she remained for three months and was treated by the company's physicians. Two days after being taken to the hospital, while returning from a lavatory, she fell prostrate on the floor, and from that date until the time of the trial she had been constantly confined to her bed and unable to walk or to care for herself. Prior to the time of the accident, the plaintiff was in good health. She had some business experience, and had earned at one

time $100 per month as assistant secretary of state for the
state of Colorado.

As to the seriousness of her condition and the probability
of her recovery, the evidence of the physicians who testified
upon the trial is conflicting. In the opinion of certain of the
physicians, her recovery was doubtful, and if a recovery at
all should take place, the period of time which would elapse
before such recovery would be measured by years rather than
weeks or months.

The cause was tried to the court and a jury. A verdict
was returned for the plaintiff in the sum of $7,900 after de-
ducting the $500 which the plaintiff had previously received.
The defendants moved that a judgment *non obstante vere-
dicto* be entered in their favor; and if this motion should be
denied, the defendants moved for a new trial upon the ground,
among others, of excessive damages. The motion for judg-
ment notwithstanding the verdict was overruled. On the
motion for new trial, the court ordered that, if the plaintiff
would elect to accept a verdict for $4,500 rather than for
$7,900, the motion for a new trial would be overruled. The
plaintiff refused to consent to the reduction. The motion for
a new trial was granted. The defendants appeal, and the
plaintiff prosecutes a cross-appeal.

Two questions are to be determined; first, did the court err
in refusing to grant the appellants' motion for a judgment
notwithstanding the verdict; and second, was there an abuse
of discretion on the part of the trial court in ordering the re-
duction of the verdict or in the alternative, granting a new
trial.

I. In support of the motion for judgment notwithstand-
ing the verdict, it is claimed there is not sufficient evidence
supporting the charge of fraud in the settlement to justify
the court in submitting that question to the jury. In cases
of this kind, the rule appears to be that, where a party claims
there was fraud or overreaching in the settlement, the burden
is upon the one making the charge to sustain it by evidence

which is clear and convincing. *Pederson v. Seattle Consol.
St. R. Co.*, 6 Wash. 202, 33 Pac. 351, 34 Pac. 665; *Nath v.
Oregon R. & Nav. Co.*, 72 Wash. 664, 131 Pac. 251.

In this case, if the evidence of the plaintiff and her daughter is to be believed, then there was sufficient evidence on this question to sustain the verdict of the jury. Where the evidence is conflicting, and the evidence offered on the part of the plaintiff is sufficient if believed by the jury to sustain the charge of fraud, the question is for the jury to determine. It is not the province of this court to weigh the conflicting evidence and determine the question *de novo*. The court can only inquire as to whether, if the evidence were undisputed, it could be said to be clear and convincing. Speaking on this question, the court, in *Westby v. Washington Brick, Lime & Mfg. Co.*, 40 Wash. 289, 82 Pac. 271, said:

"On the proposition of the settlement, the testimony is absolutely conflicting. But if the statements of the respondent and his witnesses are true, the execution of the alleged release was the perpetration upon him of a most flagrant and palpable fraud. These questions having been submitted to the jury, under proper instructions, there being no assignment of erroneous instructions, and the testimony being sufficient, if uncontradicted, to sustain a judgment, this court will not undertake to weigh such testimony. If it did, it would simply be the substitution of the judgment of this court for the judgment of the jury on the weight of the testimony and the credibility of the witnesses, a substitution not authorized by the law."

II.   The trial court ordered a reduction of the verdict from $7,900 to $4,500, or in the alternative a new trial. The respondent declined to elect to take the reduction. The court, in passing upon the motion for a new trial, stated that subsequent to the time when the verdict was returned he had had a conversation with Dr. C. A. Smith, one of the commission appointed by the court to examine the plaintiff prior to the trial, and a witness thereat. In this conversation, Dr. Smith stated that, if he had known the history of the respondent's

case at the time he testified, as it was told to him afterwards, his testimony would have been somewhat modified. The court also stated that it had searched the recent decisions of this court relative to the allowance of damages in traumatic neurasthenia cases, especially the cases reported in 62, 65 and 67 Washington Reports (without designating the particular decisions other than that of *Edwards v. Seattle, Renton & Southern R. Co.*, 62 Wash. 77, 113 Pac. 563) and had found that, "in all of those instances where the court reduced verdicts on traumatic neurasthenia, in each instance, as I remember it, to the sum of $5,000."

It appears that, in ordering a reduction of the verdict, the exercise of the court's discretion was predicated largely upon the conversation had with Dr. Smith, and upon its view of what this court had done in the way of reducing verdicts in traumatic neurasthenia cases. The conversation with Dr. Smith was *dehors* the record. Neither party had an opportunity to cross-examine him upon the statements made; and such a conversation should not be permitted to influence judicial action. We think the court was also in error in interpreting the decisions of this court as fixing a measure of damages to be allowed in traumatic neurasthenia cases at the sum of $5,000. We have searched with diligence the volumes to which the trial judge especially referred, and can find nothing in the cases there reported where the question of traumatic neurasthenia was involved to justify the belief that a fixed rule upon the question of damages in such cases had been adopted by this court. Every case, in a large measure, must depend upon its own facts and circumstances. In some cases of traumatic neurasthenia, $5,000 in damages might be grossly excessive; while in others, it might be totally inadequate to compensate for the injury sustained. Whether a reduction should be made in a verdict, or in the alternative a new trial given, is a matter which is addressed to the sound discretion of the trial court, and the appellate court will

only interfere with the exercise of such discretion where there has been an abuse shown. In *Wait v. Robertson Mortgage Co.*, 37 Wash. 282, 79 Pac. 926, it is said:

"The appellant contends that the sufficiency of the evidence to sustain the verdict of the jury is the only question before this court. On the other hand, the respondents contend that an abuse of discretion in granting the new trial is the only question before us. Manifestly the theory of the respondents is the correct one, as such questions are always addressed to the sound discretion of the trial court, and an appellate court will only interfere with the exercise of that discretion where an abuse is shown."

In the present case, we think there was such an abuse of discretion as to require a reversal of the judgment. There was substantial evidence in the record to sustain the amount of the verdict returned. The respondent, for a period of approximately 21 months, had been confined to her bed, suffering from the affliction and unable to care for herself. A number of doctors testified, in substance, that her permanent recovery was exceedingly doubtful, and if such should take place, it would be effected in a period of time which would be measured by years rather than weeks or months. The trial court, in passing upon the motion for a new trial and speaking upon her condition at the time of the trial, stated: "Whether genuine or assumed, she certainly presented a pitiable condition before the jury;" and further said that he did not think she was "faking." Had the trial court based its action in ordering a reduction of the verdict upon its conclusion after weighing the conflicting evidence in the record, a different question would then have been here presented. But we think a reduction influenced by matters outside the record, coupled with an incorrect interpretation of the decisions in traumatic neurasthenia cases, should not be permitted to stand when there is substantial evidence in the record to support the amount of the verdict; and this court, had the trial court permitted it to come here without a reduction, would not have interfered therewith.

The judgment will be reversed, and the cause remanded with direction to the superior court to enter a judgment upon the verdict.

CROW, C. J., ELLIS, GOSE, and CHADWICK, JJ., concur.