[No. 12540.  Department One.  August 20, 1915.]

THE STATE OF WASHINGTON, *on the Relation of Cecil H.
Upper, Appellant*, v. WILLIAM H. HANNA, *Treasurer
of King County, Respondent*.[1]

TRIAL — VERDICT — SPECIAL INTERROGATORIES—CONSISTENCY—CON-
STRUCTION.  Where, upon an issue as to whether H., one of the county
commissioners, was the owner of or interested in an automobile,
sold by one U. to the county, the jury, upon special interrogatories,
answered (1st) that the commissioners purchased or ratified the
purchase of the automobile from U. on a specified date, and (2d)
that H. was not the owner thereof at the time, a further answer of
"Yes" to the third interrogatory whereby they found that H. was
"beneficially interested or concerned directly or indirectly" in any
contract wherein the county purchased the automobile through or
under the supervision of the board, will not be taken as impinging
upon the others, as the jury might have understood that H. was
indirectly concerned as county commissioner, and the same will be
ignored as uncertain and inconclusive.

COUNTIES—CONTRACTS—VALIDITY — INTEREST OF COUNTY COMMIS-
SIONER—FRAUD—EVIDENCE—SUFFICIENCY.  Evidence supports findings
that H., as county commissioner, was not fraudulently and collusively
interested in the sale of an automobile to the county, where it ap-
pears that, three months previously, he had sold the automobile to
one U. for $2,000, taking an unsecured note therefor on which $100
was paid, that the negotiations for the sale were carried on between
the county physician and U. and an ambulance body was substituted,
the changes costing $700, and that, upon inspection, it was approved
by two of the commissioners; and it cannot be said that the price of
$3,000 to the county was excessive or fraudulent.

MANDAMUS—TO OFFICERS — FRAUD — BURDEN OF PROOF.  In man-
damus to restrain payment of a warrant upon the ground of fraud,
the burden of proving fraud is upon the plaintiff, and circumstances
relied upon must be such as to reasonably consist only with intent
to defraud, and inconsistent with an honest intent.

JURY—JURY TRIAL—EQUITY.  Where the parties in an equity case
stipulated that the findings shall be binding upon the parties and
court, a special verdict supported by competent evidence is as con-
trolling as in an action at law.

TRIAL — VERDICTS — SPECIAL FINDINGS — CONSTRUCTION.  Special
findings are to be construed, if possible, so as to harmonize them,

[1]Reported in 151 Pac. 83, 1087.

inconsistent parts may be disregarded, and if a finding is not specific and certain and the jury is discharged without objection, it will be construed against the party in whose favor it is found.

SALES—DELIVERY—EFFECT—TITLE—COLLUSION.  A sale of an automobile on credit to an amply solvent buyer, taking a note for the purchase price, with unconditional delivery of possession, passes absolute title and every beneficial interest of the seller, and does. not evidence a collusive sale.

APPEAL—REVIEW—VERDICT.  A verdict supported by competent evidence, untainted by illegal influence, is conclusive, whether the verdict was general or special.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered June 4, 1914, dismissing an action for a writ of mandamus, tried to the court and a jury. Reversed.

*Brightman, Halverstadt, Tennant & Clarke,* for appellant.

*Alfred H. Lundin* and *Frank P. Helsell,* for respondent.

HOLCOMB, J.—The statement of the issues made by appellant is agreed by respondent to be full and correct and is here adopted:

On March 13, 1914, the appellant filed a petition for a writ of mandate against the respondent, praying that such writ issue commanding the respondent to pay to the appellant the amount of a warrant for $3,000, drawn in his favor by the county auditor, or show cause why he should not be required so to do.  This petition was supported by the affidavit of the relator, in which it appeared that the defendant, at all times in the affidavit mentioned, was the duly elected, qualified and acting treasurer of the county of King, state of Washington; that the county of King, at all times mentioned in the affidavit, had been conducting a county hospital in the city of Seattle; that, on October 29, 1913, King county required an automobile ambulance for such hospital, and on said date the county commissioners directed the purchasing agent of the county to make a requisition for an automobile ambulance to cost not to exceed $3,000.  At

that time the relator was the owner of a Locomobile auto-
mobile, and at the special instance and request of the county
commissioners, and pursuant to such requisition, he caused
the same to be converted into an ambulance and to be
equipped with certain appliances as required by the board,
and on January 27, 1914, sold and delivered said ambulance
to King county at the agreed price of $3,000; that the am-
bulance was inspected, approved and accepted by the board.
On the same date, relator presented to the board his claim
arising out of said sale, for the agreed purchase price of
$3,000. On February 9, 1914, the commissioners examined,
allowed and approved the claim as an account legally charge-
able against the county. In due course the county auditor
examined, audited and approved said claim, and on Febru-
ary 25, 1914, drew a warrant on defendant treasurer in the
sum of $3,000, in payment of the claim. A copy of the war-
rant was set out in the affidavit, showing it to be in the usual
form. On the 25th day of February, 1914, the relator regu-
larly presented said warrant to the defendant as treasurer,
and demanded payment in cash, but the defendant wilfully,
wrongfully and without cause refused to pay the same, and
thereafter at all times continued so to do. On said February
25, 1914, when said warrant was drawn and issued to relator
and at the time it was presented to the defendant for pay-
ment, there was, and still is, in the county treasury and on
hand sufficient funds, not otherwise appropriated, to pay the
same. An alternative writ of mandate was issued to the
relator requiring him to pay the warrant or show cause why
he should not do so.

On March 24, 1914, the return day of the show cause or-
der, the defendant filed his answer in which he set up affirma-
tive defenses as follows: His first affirmative defense was
that M. L. Hamilton and Krist Knudsen were regularly
elected, qualified and acting commissioners of King county,
Washington; that on the 29th day of October, 1913, and
for several years prior thereto, and at the time of the filing

of the answer, M. L. Hamilton was the owner of a certain Locomobile automobile, said automobile being the identical machine referred to in the relator's affidavit; that being desirous of selling said automobile to King county, and of disposing of the same at a value far in excess of its true value, but being prohibited by law from so doing, and for the purpose of avoiding the statutory prohibitions, said Hamilton entered into a conspiracy with the relator shortly prior to the 29th day of October, 1913, whereby Hamilton pretended to sell the automobile to the relator; that such sale was fictitious and Hamilton was not divested thereby of his ownership therein; that said alleged sale was false, fraudulent and collusive, and done only for the purpose of avoiding the statutes prohibiting a county commissioner from making any contract with the county, of which he is commissioner, relating to any subject-matter in which he is interested; that on October 29, 1913, Hamilton and Knudsen, with full knowledge of the foregoing facts and in furtherance of said conspiracy, and in violation of their duties as commissioners, and contrary to the statutes, ordered the purchasing agent of King county, Washington, to purchase said machine for $3,000, for the use of the county hospital as an ambulance, which order was in writing; that on said date the said automobile was not an automobile ambulance, and had not been used for that purpose prior thereto; that it could not in its then condition be used for that purpose, and was not worth to exceed the sum of $300; that upon the requisition for the purchase of said automobile, said Hamilton, acting through the relator in furtherance of the fraudulent alleged scheme, caused said automobile to be converted into an automobile ambulance, and in so doing expended not to exceed $——; that on January 27, 1914, Hamilton and the relator, in furtherance of said fraudulent scheme, delivered said automobile to King county, and the relator presented a claim therefor in the sum of $3,000, which, on February 9, 1914,

said Hamilton and Knudsen, as county commissioners, approved in full, and ordered the auditor to draw a warrant therefor, over the protest of David McKenzie, the other member of the board; that although said claim was made out in the name of the relator, Hamilton was the person beneficially interested therein, and the same was presented by the relator only for the purpose of concealing the facts; that a warrant was accordingly drawn and delivered to the relator; that Hamilton was the person beneficially interested in said warrant, although the same was drawn to Upper; that, by reason of the agreement so made between Hamilton and Upper, and because of the fact that said automobile ambulance was owned by Hamilton, and that he was interested therein, the warrant was void and of no effect; that Upper presented the warrant to the defendant for payment, but that the defendant refused to pay the same for the foregoing reasons.

The second affirmative defense was to the effect that, in the purchase of said automobile, Hamilton, as county commissioner, was personally beneficially interested directly and indirectly in the sale, and that said sale was made by, through or under the supervision of Hamilton, as county commissioner aforesaid; that by reason of the fact that said Hamilton, as county commissioner, was interested personally in the sale of said automobile to the county, the sale was void, and the warrant drawn in payment therefor was illegal and void, and not a valid obligation against the county, and did not authorize the defendant to pay the same out of funds in his hands as treasurer.

A reply was duly served and filed, in which the relator admitted that Hamilton and Knudsen were regularly elected, qualified and acting county commissioners, and that he presented said warrant to the defendant, and that the defendant refused payment thereof, but denied each and every other allegation in each of said affirmative defenses.

2—87 WASH.

Although this was an action for a writ of mandamus, the defendant demanded a jury, and the court allowed the demand. Three special interrogatories were submitted by the court to the jury, to which the jury answered as follows:

"First: Did the board of county commissioners of King county, Washington, in regular or special session, purchase an automobile ambulance from Cecil H. Upper on or about the 29th day of October, 1913, or if you find that said board did not purchase said ambulance on said day, did the board at a regular or special meeting thereafter ratify the purchase of said ambulance by accepting the same and allowing the account therefor chargeable against said county at a regular or special meeting of said board, the minutes of which were signed by the chairman of said board? Answer: Yes.

"Second: Was M. L. Hamilton the owner of said ambulance at the time of said purchase, if you find there was a purchase in October, 1913, or at the time of the ratification of such purchase thereafter, if you find there was such a ratification? Answer: No.

"Third: Was said M. L. Hamilton beneficially interested or concerned directly or indirectly in any contract wherein the county purchased said ambulance or any sale thereof made by, through or under the supervision of the board of county commissioners? Answer: Yes."

The appellant duly filed a motion for a new trial, basing his ground therefor upon irregularity in the proceedings of the court and jury by which he was prevented from having a fair trial, insufficiency of the evidence to justify the verdict, and that it was against the law, errors in law occurring at the trial and excepted to by the plaintiff, which motion was overruled. Thereafter an order was filed dissolving the order to show cause, and dismissing the action with prejudice.

The trial judge having suggested to counsel his relationship with Dr. Richardson, an important witness, it was stipulated that the decision of the jury upon the special questions of fact should be binding upon the parties and the court.

We shall not discuss at great length the facts adduced at the trial, for the reason that, in our judgment, the findings of the jury upon the first and second special interrogatories are determinative of all other questions. If the board of county commissioners purchased or ratified the purchase of the ambulance from Upper on about October 29, 1913, and if M. L. Hamilton, one of the board, was not then the owner of the ambulance or of any interest in it, how then can it be asserted that the transaction was fictitious, fraudulent and collusive, so as to justify the respondent in declaring the warrant illegal, as being the consummation of an illegal transaction?

The finding of the jury upon the third special interrogatory does not impinge the second. The second propounded the principal basic fact with clear precision. The third was broad, general and somewhat involved. Had the second not been propounded and the third question propounded in its stead, its intendment might be said to cover the pertinent fact in the case. The third contains two apparently separable propositions, viz., "Was M. L. Hamilton *beneficially interested*," in any contract wherein the county purchased the ambulance; and, "Was M. L. Hamilton *concerned directly* or *indirectly* in any contract, etc.?" The jury answered "Yes." "Yes," to what? If to his being "beneficially interested," it may be affirmed that this finding is inconsistent with the second finding, which no fair intendment will allow. If "yes" to the query whether he was "directly or indirectly concerned" in any contract wherein the county purchased the ambulance, there can be no doubt but that necessarily he must have been directly concerned as a member of the board in the county's transaction. The jury might have understood it either way. It occurs to us as having either bearing. But there is evidence tending to show that Hamilton had owned this automobile; had sold it some three months prior to the transaction in question for $2,000.; that Upper gave Hamilton his note, due on or before two years from date,

with six per cent annual interest; that Upper had paid $100 on this note. No security was given for the debt, either by mortgage on the automobile or otherwise. From these facts, together with other circumstances surrounding the transaction, respondent contends that the evidence shows and the jury intended to find that the automobile was in fact the property of Hamilton and not of Upper, and that the sale by Hamilton to Upper was feigned and colorable, and the sale by Upper was really a sale by Hamilton. If that were true, the jury should, and doubtless would, have found in answer to interrogatory two, that Hamilton was the owner of the car at the time of the sale to the county. On the contrary, it found that he was not. By this it answered and found in the negative every charge and suspicion of fraud and collusion in the sale. The evidence fully justifies the first and second special findings.

The negotiations for the purchase of the car by the county were carried on during the preliminary stages between Dr. Richardson, the county physician, who desired an automobile ambulance for his use, and Upper. It was agreed that the car should be overhauled and repaired, a new ambulance body built upon it, a number of other changes and improvements made upon the car, all of which were specified by Dr. Richardson, agreed to by Upper, and the price for the car as so rebuilt and repaired to be $3,000. Mr. Upper and Dr. Richardson took the car to the court house to have the commissioners inspect it and see if it met their approval. Mr. Hamilton and one other commissioner inspected it and approved it. One of the commissioners refused to either inspect it or approve it. The improvements, repairs and changes cost something over $700. Under the evidence as a whole, it cannot be said that the price to be paid for the car, when adjusted to the needs and requirements of the county physician, was excessive and fraudulent.

The burden of proof was upon respondent to sustain his allegations of fraud. *Pedersen v. Seattle Consol. St. R. Co.,*

6 Wash. 202, 33 Pac. 351, 34 Pac. 665; *Samuel v. Kittenger,* 6 Wash. 261, 33 Pac. 509. Fraud requires clear and convincing proof. *Nath v. Oregon R. & N. Co.,* 72 Wash. 664, 131 Pac. 251; *Pierce v. Seattle Electric Co.,* 78 Wash. 167, 138 Pac. 666. Fraud will not be presumed, nor conjectured, and if circumstances are relied upon, they must be such as to reasonably consist only with the intent to defraud, and to be in some degree inconsistent with an honest intent. *Roberts v. Washington Nat. Bank,* 11 Wash. 550, 40 Pac. 225.

By the stipulation of the parties, the findings of the jury which are supported by any competent evidence are as controlling as they would be in any common law jury case. Upon the jury's findings upon the first and second interrogatories, the judgment should have been entered for appellant. We adopt these findings as being amply supported by the evidence, and ignore the third finding as being uncertain and inconclusive.

Judgment is reversed, and the cause is remanded with instructions to enter judgment for the appellant as prayed.

MORRIS, C. J., FULLERTON, MOUNT, and MAIN, JJ., concur.

### ON PETITION FOR REHEARING.
[Decided October 7, 1915.]

HOLCOMB, J.—By reason of certain arguments and statements in respondent's petition for rehearing herein, some response seems to be required.

We had not thought it necessary, in the original opinion, to enter into any discussion as to the construction of special verdicts or findings of a jury. In 1693, it was announced, in *Duncombe v. Wingfield,* Hob., 254, by Chief Justice Hobart, that, by the common law,

"It is a dangerous thing to construe a verdict larger, or otherwise than upon a sure ground, for it subjects them to an attaint."

· The various answers (to special interrogatories) should, if possible, be construed so as to harmonize them. *Union Pac. R. Co. v. Fray*, 43 Kan. 750, 23 Pac. 1039; *Kansas City v. Slangstrom*, 53 Kan. 431, 36 Pac. 706; *Stevens v. Matthewson*, 45 Kan. 594, 26 Pac. 38. Where a finding, either regarded by itself or in the light of other findings, is not specific and certain, and the jury is discharged without any objection to it or any effort to have it made specific and certain, it will thereafter be construed against the party in whose favor it is found. *Kansas Pac. R. Co. v. Pointer*, 14 Kan. 37. Frequently a special finding on a single point may determine a whole case, and under such circumstances a special finding will control any general verdict to the contrary. *Cleveland, C. C. & St. L. R. Co. v. Johnson*, 7 Ind. App. 441, 33 N. E. 1004; *McDermott v. Higby*, 23 Cal. 489. When special findings are inconsistent with each other, the court may disregard the inconsistent parts. *Dickey v. Shirk*, 128 Ind. 278, 27 N. E. 733. Where the jury are to return a special verdict on all the issues in the case, great certainty is required to enable the court to pronounce finally upon the issues, applying the law to the facts, to render the proper judgment. *Evans & Howard Fire Brick Co. v. St. Louis etc. R. Co.*, 21 Mo. App. 648; *Comer v. Himes*, 49 Ind. 482; *Scheible v. Law*, 65 Ind. 332.

We have no desire or intention of "exonerating Hamilton of fraud," or any one else, if competently and legally shown to be guilty. We attempted to apply the law to the case presented, in a brief, concise manner. Much was omitted that was considered elementary or obvious. We consider it elementary law that, when one sells a chattel, either for cash or on credit, and delivers unconditional possession to the purchaser, he parts with the title thereto absolutely, and with every beneficial interest therein. Hamilton could have conditionally sold the automobile to Upper, under our statutes, retaining the title thereto until paid. He did not so sell. His selling on credit to an amply solvent buyer, and taking

a note for the purchase price, did not make him the owner of a beneficial interest in the machine nor evidence a collusive sale. It was not inconsistent with an honest intent.

The jury, in its second finding, found that Hamilton was not the owner, when sold to the county, of the automobile which, in the first finding, it found had been sold by Upper to the county. These were findings of the ultimate facts, and were and are conclusive upon the trial court and this court. It had been stipulated by the parties that the special findings of the jury should be binding upon the parties and the court. It is universally settled that the verdict of a jury, supported by any competent evidence and untainted by any illegal influence, is conclusive. This applies to special as well as to general verdicts.

The assertion of respondent that we "declined to review the testimony" is unwarranted. It was stated in the original opinion that "We shall not discuss at great length the facts adduced at the trial, for the reason that  .  .  .  the findings of the jury upon the first and second special interrogatories are determinative of all the other questions." But the facts adduced at the trial were thoroughly examined, not merely from the abstract, but from the entire statement of facts. We do not know what the real truth of the matter is, but we know that there was competent evidence, as shown by the record of the facts, to sustain the first and second findings, untainted by any error or illegal influence upon the same, and they must, therefore, be deemed by all concerned as conclusive of the ultimate facts. Had respondent desired, it was easy to propound a simple interrogatory asking the jury whether the transaction between Hamilton and Upper was a real or a pretended sale. If the third finding is construed as respondent would construe it—that it meant, and was so intended by the jury, that "Hamilton retained some beneficial interest" in the automobile, then it is inconsistent with the second, and there is nothing but the merest speculation, conjecture, and surmise, and no "clear and convincing

proof," as required by all authorities upon an issue of fraud, to sustain it. There is, therefore, no legal intendment in favor of such a construction. Under any view of the case, the third finding must be disregarded.

Rehearing is denied.

MORRIS, C. J., MOUNT, MAIN, and FULLERTON, JJ., concur.